[Civ. No. 26953. Fourth Dist., Div. One. May 8, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
NATIONAL ASSOCIATION OF REALTORS et al.,
Defendants and Appellants.

COUNSEL

John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Michael I. Spiegel, William S. Clark and Patricia A. Cutler, Deputy Attorneys General, Edwin L. Miller, Jr., District Attorney, Charles R. Hayes and Anthony D. Samson, Deputy District Attorneys, and Robert Fellmeth for Plaintiff and Appellant.

Lasky, Haas, Cohler & Munter, Moses Lasky, John E. Munter, Luce, Forward, Hamilton & Scripps, Robert G. Steiner, Philip D. Kopp and William D. North for Defendants and Appellants.

## OPINION

**BROWN (Gerald), P. J.**—The People appeal a judgment entered after re-mand from an earlier appeal (*People* v. *National Association of Realtors* (1981) 120 Cal.App.3d 459 [174 Cal.Rptr. 728, 22 A.L.R. 4th 79] (*NAR I*) on their antitrust (Cartwright Act, Bus. & Prof. Code, § 16700 et seq.) and unfair competition (formerly Civ. Code, § 3369, now Bus. & Prof. Code, § 17200[1] et seq.) actions for injunctive relief and civil penalties against defendants San Diego Board of Realtors (SDBR), a California cor-poration, National Association of Realtors (NAR), an Illinois corporation doing business in California, and California Association of Realtors (CAR), a California corporation. NAR and CAR cross-appeal.

With the approval of NAR and CAR, SDBR operated a combined resi-dential and investment multiple listing service (MLS) to which only mem-bers of all three associations had access. SDBR allowed only exclusive right to sell listings on the MLS. SDBR encouraged its members to maintain uniform commission rates (6 percent) and to follow a uniform commission splitting formula (50/50) when using the MLS.

In 1976 the People sued SDBR, NAR and CAR, alleging the exclusion of nonmembers of the associations from using the MLS constituted an illegal group boycott and an illegal tying arrangement and encouraging mainte-nance of uniform commission rates constituted price-fixing. These activities were alleged to violate the Cartwright Act and the unfair competition stat-utes.

After trial on the original action the court found SDBR, with encourage-ment from NAR and CAR, unreasonably restrained access to the residential portion of the MLS by means of a group boycott. The court enjoined SDBR from continuing such restraint of access and received oral assurances from NAR and CAR they would voluntarily comply with the judgment. The court refused to impose any monetary civil penalties, finding it was without au-thority to do so. The court found limiting access to the investment MLS to members of the associations was not a group boycott, but did not rule on whether the practice constituted an unlawful tying arrangement. The court ruled in favor of SDBR on all other counts.

On appeal, in *NAR I*, this court (1) remanded for a determination whether "SDBR possessed sufficient economic power over the investment MLS to restrain free competition in the market for the tied product (membership in

---

[1]All statutory references are to the Business and Professions Code unless otherwise spec-ified.

other local, state or national realty associations)" (*NAR I, supra,* 120 Cal.App.3d 459, 471), and therefore was involved in an unlawful tying arrangement, and if so, for determination of appropriate relief; (2) reversed the court's finding SDBR had not participated in price-fixing, held SDBR's pressuring brokers (like Twin Palms Realty) into complying with SDBR's fixed commission and commission splitting rates was illegal price fixing, and remanded for an appropriate injunction against price-fixing on terms "as generally contained in the prayer of the second amended complaint, paragraphs 1(a), (d), (e) and (f); 2, and 5."[2] (*NAR I,* at p. 488); and (3) held the court had the authority to impose monetary civil penalties for violations of the Cartwright Act and remanded for the court to determine and impose such civil penalties if appropriate.

On remand, the trial court (1) found SDBR's limiting access to the investment MLS was not an illegal tying arrangement and therefore on that count granted no relief to the People; (2) enjoined SDBR from price-fixing;

---

[2]Paragraphs 1(a), (d), (e), (f); 2; and 5 read:

"WHEREFORE, plaintiff prays:

"1. For a permanent injunction, permanently enjoining defendants, and each of them, their agents, employees, partners, representatives, successors, assignees and transferees, and any and all persons acting in concert or in participation with them or any one of them according to proof as set forth in the First Cause of Action from:

"a. Directly or indirectly, continuing to carry out the trust, combination and conspiracy in violation of section 16720 of the Business and Professions Code and section 3369 of the Civil Code, or from engaging in any other trust, combination or conspiracy having a similar purpose or effect, or from adopting or following any practice, plan, program or device having a similar purpose or effect; and specifically, from refusing access to any licensed real estate broker or salesperson to the multiple listing service of the SAN DIEGO BOARD OF REALTORS in any sense, or from imposing costs to any such broker for the listing or use of such a service beyond the cost of providing the service itself. . . .

". . . . . . . . . . . . . . . . . . . .

"d. Directly or indirectly, prohibiting any salespersons employed by any properly licensed real estate broker from access to or use of the San Diego MLS where said broker has paid lawful fees for use of said San Diego MLS as defined herein.

"e. Directly or indirectly, requiring that those using the San Diego MLS enter into any particular kind of contract or exclusive dealing arrangement with property owners.

"f. Directly or indirectly, requiring that those using the San Diego MLS file or list all of the properties available for sale through their brokerage, or any minimum number of properties.

"2. For a permanent injunction, permanently enjoining defendants, and each of them, their agents, employees, partners, representatives, successors, assignees and transferees, and any and all persons acting in concert or in participation with them or any one of them according to proof as set forth in the Second Cause of Action as hereinbefore stated from, directly or indirectly, fixing prices or commission splits or divisions at any figure, percentage or level, or in facilitating such price fixing.

". . . . . . . . . . . . . . . . . . . .

"5. For permanent injunction enjoining all defendants from promulgating, implementing, participating in, approving, encouraging, or endorsing any plan, program, action, or conduct, which constitutes unfair competition; and in particular, any plan, action, or conduct which discriminates against any real estate broker or salesman because of his commission rate or commission split policy."

and (3) imposed $20,000 civil penalties on SDBR for price-fixing, no penalty on SDBR for its operation for the residential MLS and no penalties on NAR or CAR.

On appeal the People contend the court erred in finding SDBR's tying use of its investment MLS (the tying product) to membership in SDBR, NAR and CAR (the tied product) was not illegal. Such an arrangement is illegal when certain requirements are met. These requirements differ depending on which section of the Cartwright Act is alleged to have been violated.[3]

■ A tie-in arrangement is per se illegal under Business and Professions Code section 16727 and Business and Professions Code sections 16720 to 16726 if (1) two separate products are tied and (2) the seller has sufficient economic power over the tying product to restrain free competition in the tied product. Under section 16727 the seller has "sufficient economic power" if (a) the seller has a dominant monopolistic position in the tying product *or* (b) the tie-in restrains a substantial volume of commerce in the tied product. Under sections 16720 to 16726, however, the seller has "sufficient economic power" only if both (a) *and* (b) are found (*NAR I, supra,* 120 Cal.App.3d 459, 471-473). In *NAR I,* at pages 470-471, we held two separate products had been tied.

■ On remand the trial court found SDBR (the seller) had a dominant monopolistic position in the tying product (the MLS) and a substantial volume of commerce in the tied product (membership in local, state and national realty associations) had been restrained. However, instead of finding SDBR was participating in an illegal tying arrangement, the court erroneously considered an additional element, actual restraint of competition in the tied product, finding such actual restraint did not exist, and erroneously concluded the tie-in was not illegal. While a minority of courts have required a finding of actual restraint of competition before a tie-in could be found illegal (see *Hirsh* v. *Martindale-Hubbell, Inc.* (9th Cir. 1982) 674 F.2d 1343, 1347, fn. 16), California courts have not (*NAR I,* at pp. 469-473; see *Suburban Mobile Homes, Inc.* v. *AMFAC Communities, Inc.* (1980) 101 Cal.App.3d 532, 542 [161 Cal.Rptr. 811]; *Corwin* v. *Los Angeles News-*

---

[3]Section 16727 is the state equivalent of section 3, Clayton Act; sections 16720-16726 are patterned after the Sherman Act (15 U.S.C. § 1 et seq.), and each act has its roots in the common law. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 852 [94 Cal.Rptr. 785, 484 P.2d 953].) Decisions under the federal act are applicable when interpreting these sections. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 315 [70 Cal.Rptr. 849, 444 P.2d 481]: *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc., supra,* at p. 852, 853.)

*NAR I,* at page 469, footnote 3, in addition we observe section 16727, section 3, applies to real estate services (*Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920, 928 [130 Cal.Rptr. 1, 549 P.2d 833]).

*paper Service Bureau, Inc., supra,* 4 Cal.3d 842, 856, 858), the United States Court of Appeals, Ninth Circuit has not (see *Roberts* v. *Elaine Powers Figure Salons, Inc.* (9th Cir. 1983) 708 F.2d 1476, 1479) and the United States Supreme Court has not (see *Jefferson Parish Hospital Dist. No. 2* v. *Hyde* (1984) — U.S. —, [80 L.Ed.2d 2, 104 S.Ct. 1551]; *Fortner Enterprises* v. *U. S. Steel* (1969) 394 U.S. 495, 498 [22 L.Ed.2d 495, 502, 89 S.Ct. 1252]).

The People contend the court erred in not enjoining SDBR in terms sufficiently specific to effectively prevent future violations. The court has discretion to frame an injunction "as it may deem expedient" to deter defendants from future violations (§ 16754.5). The injunction granted here embodies in general terms the specific items the People requested with one exception: the court did not enjoin the defendants from discriminating against real estate brokers or salespersons because of their commission rates or commission split policy. In *NAR I* we directed the court to enjoin SDBR from such activity on "appropriate terms as generally contained in the prayer of the second amended complaint, paragraphs . . . 5." (*NAR I,* at p. 488.) Therefore, the injunction must be modified to include such a provision. In addition, because we hold SDBR policies concerning the investment MLS constitute an illegal tying arrangement, the court's injunction and declaration of rights must be modified to include within its scope the investment MLS as well as the residential MLS.

The People contend the court abused its discretion in not imposing any civil penalties against NAR and CAR; not imposing any civil penalties against SDBR for restricting use of the residential MLS; not using a "per violation" analysis to fix SDBR's penalty for price fixing; fixing the penalties in an amount so low it neither punished the associations nor deterred them or others similarly situated from future violations; and considering the associations' good faith as a mitigating factor. In *NAR I* at page 476, we held the associations were subject to civil penalties under Business and Professions Code section 17206 for their violations of the Cartwright Act.

Section 17206 states the court shall assess a civil penalty not to exceed $2,500 for each violation constituting unfair competition as prohibited under section 17200. In our order of remand, we directed the court to determine and impose the appropriate civil penalty, *if any,* for each act found to violate the Cartwright Act (*NAR I,* at p. 488). Not unreasonably, the trial court interpreted our mandate as permitting it not to impose a penalty for such violations if it found them unwarranted. Accordingly, it did not impose penalties against the SDBR for its acts of unfair competition in denying nonmember brokers access to the residential MLS (count I) because the unlawful acts were based upon "able legal advice," and there *is* no need to

deter future violations. For the same reason, penalties were not imposed upon NAR and CAR relating to their acts restraining access to the residential MLS.

 While the court's interpretation of our remanding language is reasonable, a plain reading of section 17206 shows the duty to impose a penalty for each violation of the Cartwright Act is mandatory, even though the actor reasonably relied on "able" counsel. This fact, and the lack of need to deter, are appropriate considerations for setting the amount of the penalty, but not to eliminate it. Therefore, the court abused its discretion in not imposing any penalty on NAR, CAR, and SDBR for denying nonmember brokers access to the residential MLS.

When the court imposed the $20,000 penalty on SDBR for price fixing, it interpreted the penalty provision as being satisfied if one penalty were imposed for each *type* of act found to have unfair competition and rejected the People's arguments that, at a minimum, it requires a penalty be imposed for each separate act of unfair competition. Thus, the court erroneously assumed that 1,000 separate and independent similar acts of unfair competition would subject SDBR to no more penalties than if it committed one. The court made no attempt to determine the number of individual acts of unfair competition but did identify six separate *categories of offenses.* The court noted imposing one full penalty for each of the six classes of transgressions would provide a total penalty of $15,000. Concerned that imposing single penalties as to each type of act, rather than each act, might not comply with the statute, the court increased the penalty "more or less arbitrarily to $20,000."

Were a criminal defendant convicted of a series of embezzlements over a period of 20 years, interspersed with a few robberies, no one would interpret the Penal statutes to be satisfied were the court to punish once for embezzlement and once for robbery, even though the goal of these repeated acts was the same: enrichment of the defendant at the expense of others. Each act is subject to separate punishment. Civil penalties imposed to punish civil wrongs must be treated the same way. The court's penalty computations based upon one full penalty for each type of price-fixing violation plus $5,000 is similar to the court's erroneous view of section 17206 denounced in *People* v. *Superior Court (Olson)* (1979) 96 Cal.App.3d 181 [157 Cal.Rptr. 628]. There, the Court of Appeal rejected the concept there could be but one "violation" of section 17200 for each day an unlawful advertisement appeared in a single edition of a newspaper. Rather it ordered the court to consider the number of individuals who read and/or responded to the advertisements.

Further, the Supreme Court in *People* v. *Superior Court* (*Jayhill*) (1973) 9 Cal.3d 283, 289 [507 P.2d 1400, 55 A.L.R.3d 191], interpreted similar language in section 17536, subdivision (a) as meaning the Legislature intended the number of violations to be determined by the number of persons to whom certain misrepresentations were made. There, a firm was charged with violating section 17500 through a scheme to mislead customers obtained through door-to-door solicitations by a series of misrepresentations. (This conduct also violates the unfair competition statute, § 17200.) Although the complaint only alleged one cause of action, it involved multiple victims. The Supreme Court held the amount of civil penalties does not depend on the number of causes of action, but on the number of "violations" committed, and that multiple violations occur where multiple persons are affected by separate acts although pursuant to a single scheme. *Olson,* of course, goes further and finds separate violations where a single act actually affects multiple victims.

Although presented with evidence in the trial record and statistical evidence concerning numbers of victims and numbers of independent acts, the trial court did not attempt to determine the number of violations based upon that evidence. As stated in *Olson,* at page 198, violations calculated in this manner reasonably relate to the gain or opportunity for gain achieved by the unlawful acts and can fairly be determined through expert testimony, the facts elicited at trial and circumstantial evidence. Further, the amount of the monetary gain need not be established by showing the monies gained went into SDBR coffers, where SDBR activities were designed to, and did, unfairly permit its members to obtain those gains. Further, in offsetting the benefits of any such monetary gain, the trial court can judicially notice inflation; i.e., that the dollar value of the penalty imposed today is substantially less than the same number of dollars at the time the unlawful benefits were received.

■ We hold the court erred in imposing civil penalties on SDBR for price fixing without considering the numbers of persons directly affected by each act of unfair competition, without considering numerous specific acts of unfair competition were committed against Twin Palms and perhaps others, without considering SDBR bears legal responsibility for the malicious and predatory acts against Twin Palms, without considering the degree of harm the acts of harassment and unfair competition actually caused Twin Palms, or the nature and extent of the public injury (*People* v. *Superior Court* (*Olson*), *supra,* 96 Cal.App.3d 181).

We do not suggest what amount of penalty would be so unreasonably low or high to be an abuse of the trial court's discretion once it identifies the number of violations and considers all appropriate factors. We recognize

the mathematical identity of sums arrived at by assessing $2,500 for a single violation and by assessing $1 for each of 2,500 violations.

In considering the public or private harm, the court should treat multiple violations deserving identical treatment the same, and those which have caused greater or lesser harm differently if all other relevant factors are equal.

With acknowledged awareness that concerted actions designed to maintain uniform commission rates were judicially declared to violate federal anti-trust laws as early as 1950 (see *United States* v. *Real Estate Boards* (1950) 339 U.S. 485 [94 L.Ed. 1007, 70 S.Ct. 711]), SDBR altered its policies so as to covertly, rather than openly, encourage its members and committees to bring economic and peer pressure against brokers who might be inclined to deviate from maintaining a strict 6 percent commission rate and 50/50 split. The original trial record is replete with instances in which brokers were coerced and/or discriminated against for price-cutting activities. The extent to which the Twin Palms Realty was subjected to repeated harassment with the knowledge of the active leadership of SDBR is partly recited in *NAR I*, pages 482-487. In spite of this uncontradicted trial evidence, on remand the court stated in its memorandum of ruling, no one suggests these activities were wicked, motived by ill will, or predatory.

The court erred as a matter of law in finding the actions against specific price cutters to be nonpredatory and not motivated by ill will. They were deliberately designed to and did create economic and personal hardship on brokers deviating from price-fixing policies which SDBR publicly disa-vowed, but privately enforced. They were aimed at either forcing price cutters to join in the illegal price-fixing or go out of business. These, and other acts by which it induced uniformity in setting and sharing commis-sions, were for the sole purpose of enhancing SDBR's market power through restricting competition at the expense of nonmember brokers and the public.

The court fixed the amount of penalties at a level commensurate with its belief they were technical, albeit intentional, good faith actions. As a matter of law, the repeated, concerted attempts to deprive Twin Palms of its pres-ent and future income-generating clients cannot be so viewed. Nor may SDBR avoid responsibility by claiming the unlawful acts of its officers or members with apparent authority to act on its behalf are not binding upon it because they were never ratified or formally approved by official SDBR action. The unique place of trade associations in today's economy mandates they be liable under antitrust laws for violations of agents com-mitted with apparent authority. (See *American Soc. of M. E.* v. *Hydrolevel*

*Corp.* (1982) 456 U.S. 556 [72 L.Ed.2d 330, 102 S.Ct. 1935].) ▮▮▮ This is especially true here where the violations by officers and members were inspired by SDBR's actual operating policies and, in most instances, the operating directors of SDBR were aware of the officers' and members' harassing activities.

SDBR stresses the purpose of civil penalties are to punish and to deter. In determining whether a punishment be suitable, it is necessary to correctly weigh the grievousness of the act for which punishment is imposed. Here, the court erroneously believed the penalty was to punish for activities reasonably believed to be lawful and which were committed without any predatory or malicious motive. Upon remand, the court shall reconsider the penalty imposed for the price-fixing violation, taking into consideration the fact SDBR knew of and condoned the malicious conduct against Twin Palms and others as shown by the evidence.

The People contend the court erred in using language in its judgment describing the relationship between brokers who represent sellers and those who represent buyers on the MLS as a subagency. While we do not decide whether the relationship is legally a subagency, we note calling the relationship a subagency is not unusual (see *Derish* v. *San Mateo-Burlingame Bd. of Realtors* (1982) 136 Cal.App.3d 534, 538, 542 [186 Cal.Rptr. 390]) and therefore, the court did not err in using the term.

On cross-appeal NAR and CAR request we reconsider our holding in *NAR I,* at page 468, that *Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920 [130 Cal.Rptr. 1, 549 P.2d 833], requires a board of realtors to give access of its MLS to nonmembers even where membership in the board is open to all real estate licensees on reasonable and nondiscriminatory terms. We deny this request for the reasons we gave in *NAR I,* at page 468. In addition, we note the New Jersey case the cross-appellants cite, *Pomanowski* v. *Monmouth County Bd. of Realtors* (1982) 89 N.J. 306 [446 A.2d 83], certiorari denied (1982) 459 U.S. 908 [74 L.Ed.2d 170, 103 S.Ct. 213] disagreed with our *NAR I* analysis of *Palsson* on the authority of footnote 13 in *Palsson,* at page 938. The New Jersey court interpreted footnote 13 as saying *Palsson* required nonmembers access to a board's MLS only when the limitation on access was found to exist in combination with other restrictions, such as the board not being open to all real estate licensees on fair and reasonable terms. However, the footnote merely emphasizes the court is allowing judicial review of a private organization's membership requirements (i.e., the requirement that only real estate licensees "primarily engaged" in the trade could be members of the board) only under the limited circumstances where such requirements are found in combination with other reviewable issues (i.e., the validity of limited access to

the MLS). *Palsson* allowed review of the "primarily engaged" rule only because it was in combination with the "access" rule, but it held each rule separately violates California antitrust laws (*Palsson, supra,* 16 Cal.3d 920, 938, 940).

We deny NAR and CAR's request for costs and attorney fees incurred in responding to the issue whether the trial judge should have been disqualified, which the People raised in their opening brief, but later withdrew in their reply brief. Had the People not withdrawn the issue from our consideration, the request would be without merit. The People should not be penalized for their generosity in withdrawing the issue.

The judgment is reversed as to its finding no illegal tying arrangement existed regarding the investment MLS, with directions for the superior court in harmony with this opinion to (a) impose appropriate civil penalties against NAR, CAR and SDBR for such illegal tying; (b) frame an appropriate injunction against further participation in such tying arrangements and modify the existing injunction to apply to the investment of MLS as well as the residential MLS; (c) impose appropriate civil penalties against NAR, CAR and SDBR for each act unlawfully restraining access to the residential MLS or encouraging or fostering such restraint of access; and (d) add to the existing injunction prohibitions against discriminating against real estate brokers and salespersons for their commission setting and splitting policies on appropriate terms as generally contained in the second amended complaint prayer, paragraph 5. Finally, in fixing civil penalties, the court shall determine the number of violations in a manner consistent with this opinion, and impose appropriate monetary penalties for each violation after evaluating relevant factors.

Staniforth, J., and Work, J., concurred.

The petition of defendants and appellants for a hearing by the Supreme Court was denied August 30, 1984. Grodin, J., was of the opinion that the petition should be granted.