[Civ. Nos. 68795, 59109. Second Dist., Div. Two. Aug. 16, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
CUSTOM CRAFT CARPETS, INC., et al., Defendants and Appellants.

COUNSEL

John K. Van de Kamp, Attorney General, Herschel T. Elkins, Assistant Attorney General, Michael R. Botwin and Ronald A. Reiter, Deputy Attorneys General, Ira Reiner, City Attorney, and Lynn Miller, Deputy City Attorney, for Plaintiff and Appellant.

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Robert H. London, H. Douglas Galt, Mark Green and Robert F. Mann for Defendants and Appellants.

OPINION

ROTH, P. J.—In these consolidated appeals and cross-appeal we try to put an end to more than seven years of bitter, hard-fought contention between these parties.

I

In response to consumer complaints, the Attorney General and Los Angeles City Attorney together investigated Custom Craft Carpet's advertising and marketing practices. In 1977 they advised Custom Craft that they intended to file a civil action against it. They proposed to settle the case by way of a civil penalty and an injunction against certain practices. Custom Craft's reaction was a preemptive strike: it filed an action which in *Custom Craft Carpets, Inc.* v. *Miller* (1982) 137 Cal.App.3d 120 [187 Cal.Rptr. 78] we described as an attempt to invent a "tort consisting of the mere filing of an action or a statement of intent to do so." (*Id.* at p. 125.) In affirming summary judgment against Custom Craft, we levied a $10,000 penalty for taking a frivolous appeal. We mentioned "our firm belief that the entire matter from trial level to the appellate level was a sham designed to gain time for Custom Craft to continue its improper conduct." (*Id.* at p. 123.)

On January 10, 1978, the Attorney General and Los Angeles City Attorney filed an action against Custom Craft. The essence of the complaint is

unfair competition in violation of Business and Professions Code section 17200 and making false or misleading statements in violation of Business and Professions Code section 17500. On May 30, 1978, the trial court issued a preliminary injunction against Custom Craft. Custom Craft appealed.

The trial began on January 19, 1981, and concluded on April 1, 1981. The record fills eight volumes. The court found against Custom Craft and ordered the Attorney General to prepare a final judgment in substantially the same form as the preliminary injunction.

We need not recite in great detail Custom Craft's various offensive practices. A few choice examples will do.

Custom Craft produced television commercials which advertised 270 square feet of carpeting for $159. While supposedly depicting 270 square feet of carpeting, substantially more carpeting was displayed. The commercials also had a backdrop of many rows of thick and expensive-looking carpets. However, not all of these were the advertised carpeting.

When a person responded to the television advertisement, a salesman visited the potential customer's home. The salesman then ran a short film. Among other things, this film showed two carpets, one supposedly installed by Custom Craft, the other by a department store at about the same time. The Custom Craft carpet "still looks like new," while the department store carpet was "already matted and showing wear—the seams are separating." In fact, the "department store" carpet was an aged carpet chosen by Custom Craft for use in the film. It was simply laid on the floor, not installed. The workers, who were told to make it look worse than it already did, scattered carpet remnants on it; they positioned the carpet to make it seem that the sides were tearing and the corners were lifting from the walls. The "Custom Craft" carpet was said to be installed in the home of a family of five. In fact, it was located in the Custom Craft office.

After the film was shown, the salesmen usually showed customers samples of nonadvertised carpets before showing the advertised carpeting. The nonadvertised carpet was a better grade of carpeting than the advertised carpet, and came in more colors and styles. Customers were told that the nonadvertised carpet came with a 10-year guarantee, that it was a better grade, and that it would last longer than the advertised carpet.

On the other hand, salesmen said of the advertised carpet, "I wouldn't let this junk be installed in my house—it's so cheap," or, "I wouldn't put that in a dog house." In short, a bait and switch operation.

Some customers with poor credit ratings signed lien contracts and deeds of trust to their homes, generally without understanding the import of the documents. Eighteen Custom Craft customers lost their homes through foreclosure—merely because they failed to keep up with the payments on their carpets.

The carpets were often of poor quality and poorly installed.

Custom Craft's collection procedures fit comfortably into this picture. For example, Custom Craft President Jason Taite, in dealing with a customer whose check had bounced, impersonated a deputy sheriff and threatened to arrest the customer unless she paid immediately.

This is only a sample of Custom Craft's business practices.

The Attorney General appeals because he did not get all that he requested. Custom Craft appeals from both the preliminary and the final injunctions. However, the injunctions are virtually identical and we will consider them together.

## II

Custom Craft is unhappy with a number of injunctive provisions. Its complaints fall into three categories: that the provisions are vague and indefinite; that they violate the First Amendment's guarantee of free speech; and that the provisions do not conform to statutory requirements. The contentions are meritless.

■ A. The terms of an injunction must be plain enough that a person of common intelligence can understand them. (*Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 644, 651 [83 Cal.Rptr. 35].) An uncertain injunction is invalid. (*Ibid.*) However, there is a crucial distinction between "vague and indefinite" and "broad and general." The injunction need not etch forbidden actions with microscopic precision, but may instead draw entire categories of proscribed conduct. Thus, an injunction may have wide scope, yet if it is reasonably possible to determine whether a particular act is included within its grasp, the injunction is valid.

In addition, when determining whether a party has been given sufficient notice of conduct prohibited by an injunction, the injunction must be interpreted in the light of the entire record. (*People* v. *Wheeler* (1973) 30 Cal.App.3d 282, 296 [106 Cal.Rptr. 260].) ■ In this case, there is plenty of record with which to illuminate the injunction. Insofar as the trial revealed innumerable instances of unethical conduct by Custom Craft, and

the Attorney General prevailed below, we think that the trial court intended to adopt the Attorney General's view of Custom Craft's conduct. This lends lucidity to the injunction.

With these points in mind, we find Carpet Craft's complaints to be insubstantial. For example, provision D enjoins Custom Craft from: "Making any advertising claim or representation pertaining to more than one article of merchandise or type of service, within the same class of merchandise or service, if any price set forth in such claim or representation does not clearly and conspicuously identify the article of merchandise or type of service to which it relates. Disclosure of the relationship between the price and the particular article of merchandise or type of service by means of an asterisk or other symbol, and corresponding footnote or written disclosure during a television commercial does not meet the requirement of clear and conspicuous identification." Although provision D speaks in general terms, it speaks with more than satisfactory clarity.

Similarly, provision P forbids: "Representing directly or by implication that defendants' representatives are factory trained experts unless in fact all of the defendants' representatives are factory trained or unless defendants disclose at the same time and in the same manner (e.g., orally, if the representation is oral) that only some of its representatives received factory training." Custom Craft asserts that this language does not resolve the problem of the parties' differing interpretations of the term "factory training." Viewed in the light of the whole record, we think it evident that the court adopted the Attorney General's interpretation. (*People* v. *Wheeler, supra,* 30 Cal.App.3d 282, 296.)

Finally, provision Z prohibits: "Violating any provision of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.)." It should not be necessary to say that the mere fact that this act comprises 38 sections does not render the injunction vague.

B. Custom Craft's First Amendment claim is similarly without substance. Its position is that it cannot be burdened with the requirement of substantiating the truth of its advertising claims, as in provision Q. This section enjoins Custom Craft from: "Representing directly or by implication that defendants sell carpeting at lower prices than its competitors unless said representation is true and unless defendants keep and maintain records adequate to substantiate the same."

While Custom Craft is correct that commercial speech is protected by the First Amendment (*Bolger* v. *Youngs Drug Products Corp.* (1983) 463 U.S. 60, 64-65 [77 L.Ed.2d 469, 476 [103 S.Ct. 2875]), it forgets that

the level of protection is lower than for other forms of expression. (*Ibid.*) The Supreme Court has devised a four-part analysis of the validity of commercial speech regulation: "At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." (*Central Hudson Gas & Elec.* v. *Public Serv. Comm'n* (1980) 447 U.S. 557, 566 [65 L.Ed.2d 341, 351, 100 S.Ct. 2343].)

Custom Craft's future advertisements fall into two categories; those that will be misleading, and those that will not be misleading. The misleading advertisements stand essentially naked of any First Amendment cloak of protection, because "[f]or commercial speech to come within that provision, it at least must concern lawful activity and *not be misleading.*" (*Central Hudson Gas & Elec.* v. *Public Serv. Comm'n, supra,* 447 U.S. at p. 566 [65 L.Ed.2d at p. 351]; italics added.) Nonmisleading advertisements satisfy the first branch of the *Central Hudson* test. Moving on to the second, we conclude that the state's interest—protecting members of the public from merchants who would deceive and cheat them—is substantial. Requiring substantiation of advertising claims directly advances that governmental interest. The substantiation requirement is reasonable and no more burdensome than necessary, in view of the court's finding that Custom Craft had a practice of disseminating false and misleading advertisements. The *Central Hudson* analysis is therefore satisfied as to both misleading and honest advertisements. As a consequence, we hold that it is constitutionally permissible to compel an advertiser, found to have previously misled the public, to substantiate its advertising claims.·

C. Finally, Custom Craft contends that certain sections are invalid because they are not supported by statutory authority. For example, provision G forbids Custom Craft from: "Requiring or requesting a person to sign a contract which provides that attorney's fees and costs which are incurred to enforce the provisions of such contract shall be awarded to the seller or holder unless said contract also provides that said attorney's fees and costs shall be awarded to the seller or holder only if they prevail in a court action to enforce said contract and to the customer should the customer prevail." This is bad, proposes Custom Craft, because it goes beyond the terms of Civil Code section 1717, which states: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is

determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary discursements. . . . [¶] Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void.

"(b) (1) The court, upon notice and motion by a party, shall determine who is the prevailing party, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the prevailing party shall be the party who is entitled to recover costs of suit."

It is beside the point whether or not Civil Code section 1717 authorizes provision G. Custom Craft cites no authority for its proposal that a court may only enjoin a practice if the Legislature has already disapproved that practice. ▮ On the contrary, while an injunction may not go against statutory law, it may go beyond statutory law. A court sitting in equity has broad power to fashion relief to fit the facts before it. " 'Equity does not wait on precedent which exactly squares with the facts in controversy, but will adjust itself to those situations where right and justice would be defeated but for its intervention.' [Citations.]" (*Roman* v. *Ries* (1968) 259 Cal.App.2d 65, 70 [66 Cal.Rptr. 120].)

It would be pointless to play out the analysis of each and every injunctive provision. The injunction contains no error.

### III

The Attorney General contends that the trial court erred by not rescinding existing trust deeds and enjoining their future use. We agree.

▮ Preliminarily, Custom Craft asserts that the court could not enjoin the use of lien contracts because the Attorney General did not specifically allege those abuses in the complaint, but only raised them for the first time after Custom Craft rested. This assertion is meritless. We need only point out that Custom Craft filed a "Defendant's Memorandum Concerning the Relevancy of Lien Contract Evidence" before it started its defense. Custom Craft was clearly apprised of the Attorney General's concern with the trust deeds during pretrial discovery. The Attorney General's complaint alleged acts of unfair competition including but "not necessarily limited to" the list of specified improper acts. This quoted language is flexible enough to encompass the improper use of trust deeds. (*People* v. *Bestline Products, Inc.*

(1976) 61 Cal.App.3d 879, 907 [132 Cal.Rptr. 767].) Custom Craft was not surprised, nor did it suffer any prejudice.

█   The Attorney General urges several reasons for voiding the lien contracts; we are content to decide on one ground only. Civil Code section 1804.3, subdivision (b) states: "Any contract for goods which provides for a security interest in real property where the primary goods sold are not to be attached to the real property shall be a violation of this chapter." Thus, if Custom Craft's carpets are not "attached" to the homes in which they are installed, the taking of trust deeds in those homes is forbidden by the Legislature.

Both sides have spilt a great deal of ink over this question. It is a question of fact (*Walker* v. *Thornsberry* (1979) 97 Cal.App.3d 842, 847 [158 Cal.Rptr. 862]), and one which has previously been examined in California. Custom Craft employs the "tackless strip" technique of carpet installation:

"The tackless strip method involves cutting carpet to room size; nailing strips of wood containing little barbs or tacks sticking up toward the wall at a 60 degree angle around the perimeter of the room's floor; sticking with water soluble paste (first floor cement floors) or staples (second floor wooden floors) a rubber pad between the perimeter strips and stretching the carpet over the barbs, leaving the carpet firm and smooth on the floor. No molding is used. The rubber pad and carpet can easily and rapidly be removed without damaging the pad, carpet or floor. Pulling the pad upward pulls out the staples without the use of a tool. The tackless strips are removable and reusable." (*Finley-Gordon Carpet Co.* v. *Bay Shore Homes, Inc.* (1966) 247 Cal.App.2d 131, 132 [55 Cal.Rptr. 378].) The court in *Finley-Gordon* upheld the trial court's determination that carpets laid by the tackless strip method do not become a fixed part of the structure. (*Ibid.*) *Walker* v. *Thornsberry, supra,* 97 Cal.App.3d at page 847, notes the *Finley-Gordon* holding without disapproval. Although those cases dealt with somewhat different legal issues, there is no reason to depart from them on this factual point. We therefore hold that carpets installed by the tackless strip method, such as Custom Craft's, are not attached to real property within the meaning of Civil Code section 1804.3, subdivision (b). Thus, that section proscribes the trust deeds at issue here. This conclusion is in harmony with our mandate to liberally interpret the Unruh Act in order to protect the consumer. (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 846 [135 Cal.Rptr. 771, 558 P.2d 857].)

Any contract provision prohibited by the Unruh Act is void. (Civ. Code, § 1804.4.) The trial court therefore erred in failing to declare the trust deeds void and failing to enjoin their further use. Moreover, it was an abuse of

discretion not to order restitution. Custom Craft argues that the finance companies to whom it assigned the trust deeds are indispensible parties. Custom Craft is off the mark. The trial court can order Custom Craft to repurchase the outstanding lien contracts, or require Custom Craft to pay any delinquencies to avoid foreclosure. There is no bar to doing complete justice by the victims of Custom Craft's business practices.

## IV

The Attorney General next contends that civil penalties should have been imposed under Business and Professions Code sections 17206, subdivision (a), and 17536, subdivision (a) which concern unfair competition and false advertising respectively. Each section states: "Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation."

"[A] plain reading of section 17206 [and section 17536] shows the duty to impose a penalty for each violation . . . is mandatory." (*People* v. *National Association of Realtors* (1984) 155 Cal.App.3d 578, 585 [202 Cal.Rptr. 243].) The court in *National Association of Realtors* stated that it is an abuse of discretion to not impose a penalty (*ibid.*); however, it would be more accurate to say that the court simply lacks any discretion under these sections to not impose a penalty.

Moreover, the court must exact a penalty for *each* violation committed. (*People* v. *National Association of Realtors, supra,* 155 Cal.App.3d at p. 585.) The amount of each penalty, however, lies within the court's discretion. (*Id.* at p. 586.)

Custom Craft suggests that *National Association of Realtors'* holding is merely that penalties are mandatory if defendant acted out of *malice*. It reaches that conclusion by ignoring the above quoted language, instead focusing on the following: "We hold the court erred in imposing civil penalties on SDBR for price fixing without considering the number of persons directly affected by each act of unfair competition, without considering numerous specific acts of unfair competition were committed against Twin Palms and perhaps others, without considering SDBR bears legal responsibility for the malicious and predatory acts against Twin Palms, without considering the degree of harm the acts of harassment and unfair competition actually caused Twin Palms, or the nature and extent of the public injury [citation]." (*People* v. *National Association of Realtors, supra,* 155 Cal.App.3d at p. 586.) Custom Craft quotes this passage, and others like it, out of context. A reading of the entire opinion reveals that the court is

here simply elucidating various factors for setting the *amount* of the penalties, not suggesting that penalties were inappropriate in that case.

The court below erred by not imposing civil penalties.

## V

We can dispose of the parties' other contentions summarily.

The Attorney General asks us to declare the trial court's failure to award costs an abuse of discretion. The point is controlled by Code of Civil Procedure section 1032, which plainly states that the apportioning of costs lies in the court's discretion. The Attorney General cogently argues the policies favoring an award of costs; he has not made out an abuse of discretion.

Both sides urge us to penalize the other for taking frivolous appeals. We decline the invitation.

The judgments are affirmed in part and reversed in part as herein set out. We remand for further proceedings in conformity with this opinion. Costs to plaintiff on all appeals.

Compton, J., and Gates, J., concurred.