Filed 3/6/26

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MONTECITO COUNTRY CLUB, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KEVIN C. ROOT et al. <br><br> Defendants and Appellants. | 2d Civ. No. B341762 <br> (Super. Ct. No. 21CV02227) <br> (Santa Barbara County) |

Kevin and Jeannette Root appeal the judgment after a court trial quieting title to "an easement for cart path and greenskeeper truck purposes" along the southern part of their property. They contend the trial court erred by: (1) finding respondent Montecito Country Club, LLC did not abandon the easement when it rerouted the cart path in 2016; (2) granting respondent prescriptive rights to maintain a boundary hedge and accessory landscaping; and (3) enjoining the Roots from

---

\* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]]

interfering with these rights and ordering them to remove improvements they made to the easement area in 2020.

We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Respondent operates the Montecito Club, a country club in Santa Barbara with an 18-hole golf course. It is among several local properties owned by Ty Warner Hotels and Resorts (TWHR). The Roots bought a house immediately north of holes 13 and 14 in the fall of 2015. "[A]n easement for cart path and greenskeeper truck purposes" arcs east-west along the southern part of their property. The Roots were not aware of the easement when they bought the house. A large oleander hedge and chain link fence separated appellant's backyard from the cart path and golf course.

Respondent redesigned the golf course around the time the Roots bought their house. It routed the cart path away from their backyard and planted native vegetation in the area around holes 13 and 14. The oleander hedge grew to cover most of the old path and came within feet of the Root's swimming pool. The Roots discovered the easement's existence in 2017 after meeting with respondent to discuss trimming the overgrown hedge.

In 2018, the Roots began experiencing problems with rats in the hedge. They proposed removing it, planting a new one further south along the property line, and landscaping the area of the backyard once covered by the old hedge and cart path. TWHR employee Bill Medel denied the Roots' request in a June 2018 email that read: "I had the opportunity to discuss your request and landscape proposal with the owner of the Montecito Club. Unfortunately he sees no benefit of relocating his fence along the easement or relinquishing this asset. However, we will

continue to work with you in maintaining the existing hedge and landscape on our side of the fence."

The Roots filed a claim with their title insurance company, which offered to pay respondent $50,000 to release the easement. Respondent did not accept the offer.

The Roots revived the idea of replacing the hedge in 2019 after collaborating with Greg Villeneuve, the Montecito Club's general manager, on other issues affecting their properties. Villeneuve recommended speaking with Tennessee McBroom, the club's director of agronomy and head groundskeeper. McBroom and Kevin Root met in the easement area in January of 2020. McBroom only recalled discussing the types of plants that would best replace the oleander. Root recalled discussing not just plants but also his plan to move the hedge southward to the property line. Root testified McBroom was "amenable" to moving the hedge.

Root sent a text message to McBroom on September 1, 2020, about moving forward with the hedge project. The message stated: "Hi Tennessee, this is Kevin Root at 1059 summit rd. - I just tried you and it went straight to VM. I spoke w you and Greg a few months back about the hedge we wanted to work on. We are experiencing a bit of a rat infestation and need to replace the hedge on our property. Can you give me a call to discuss. We want to make sure we have all of your irrigation lines identified so that we can cap everything." McBroom responded by email on September 7: "Kevin, can you send me your contact information, let's talk this week about work along our properties. We will have to get Bill Medel involved as well, Greg Villeneuve is no longer with the company, thanks Tenn[.]" Root emailed McBroom the contact information for his general contractor. McBroom responded, "Ok, Bill [Medel] will be back Thursday, I

3

need ownerships approval before we move anything, thanks Tenn[.]"

McBroom, Kevin Root, and the Roots' contractor met on September 10. Their accounts of the meeting are different. McBroom recalled the meeting lasting five or ten minutes and again focusing on which plant types to use. He told them they could replace the oleander hedge with a new hedge in the existing location. When Root pointed out what he thought was the property line, McBroom remembered saying, "I don't know anything about that. You can replace the existing hedge where it is like for like." Root and Root's contractor, however, said they showed McBroom the property line and confirmed where they intended to plant. Root estimated the meeting lasted 20 to 30 minutes, not five or ten.

The Roots planted a new hedge along their property line on September 18. McBroom received a picture by text, responded it "looked good," and requested the contractor clean the area and apply mulch. McBroom and the contractor then "walked" the project on September 28. Again, the parties' memories of the meeting differ. McBroom remembered being upset they moved the hedge down to the property line. He told the contractor it "was wrong" and "expected them to contact their client, Mr. Root, and fix it with the club." The contractor denied McBroom acting angry or telling her the hedge was in the wrong place.

After this meeting, the Roots built a four-foot retaining wall behind the new hedge along its entire length. They raised the easement area to grade with 400 cubic yards of dirt from another part of their property. They acknowledged this part of work was not discussed with McBroom at the January and September meetings. The Roots estimate the landscaping project cost $300,000.

Respondent's attorney sent the Roots a cease-and-desist letter in January of 2021. It stated in part: "Your recent construction activities within the easement area create obstructions that interfere with my client's rights to use the property. You commenced these activities without legal permission or right, with actual knowledge of my client's easement rights, and after my client, in 2018, expressly rejected your request that it agree to relinquish the easement. [¶] We hereby demand that you immediately cease and desist from undertaking any further actions related to the construction or alteration of the easement area and restore the Easement Area to the condition it was in prior to your activities."

Kevin Root responded with a personal letter to Ty Warner, TWHR's owner. He acknowledged Warner denied their previous landscaping proposal but said Greg Villeneuve and McBroom later supported the project. Root wrote: "We had several conversations about what type of hedge would be consistent with the rest of [Montecito Club] and how high the hedge should be so that the golfers would see as little of the house as possible. Throughout the design process our contractor was in touch with [Montecito Club]." The letter concluded: "I assure you that we will be happy to return the area to a golf cart path if at some point in the future you re-design the course and need the easement for that purpose. Until that happens, I hope that you can see from our actions, intentions, and finally from the work that we have done that both of us are better off now than we were before we started the backyard renovations."

Respondent sued to quiet title to both the recorded easement and a prescriptive easement "for the purpose of planting and maintaining a boundary hedge, installing landscaping and hardscaping, and those other uses . . . ." It

5

sought declaratory relief and an injunction ordering the Roots to remove the retaining wall, fence, and other encroachments from the easement area. The Roots' answer raised the affirmative defense of abandonment of the easement, among others.

The court received proposed statements of decision from both sides at the close of evidence. It adopted respondent's version. It entered judgment finding the recorded easement was valid and was "expanded by historical usage to encompass the maintenance of a boundary hedgerow" and "to permit accessory landscaping on the Easement Area not otherwise used for cart path purposes." The judgment directs the Roots to "immediately commence the process of removing the Encroachments from the Easement Area and restoring the Easement Area to the condition that existed on September 8, 2020 . . . ." It prohibits the Roots from "unreasonably interfering" with the easement going forward.

DISCUSSION

[[*Abandonment of Easement*

The Roots contend the trial court erred in finding respondent did not abandon the easement because it "never addressed" the easement's purpose and scope when created. They argue the undisputed evidence shows its purpose "was to service and provide access to (then) holes 13 and 14 for golfers and grounds crew." The 2016 reconfiguration, it follows, eliminated any need for a path to access holes 13 and 14 resulting in an abandonment of the easement. We disagree.

""As a general rule, in order to constitute an abandonment of an easement . . . there must be a nonuser accompanied by unequivocal and decisive acts on the part of the [dominant tenant], clearly showing an intention to abandon."" (*Gerhard v. Stephens* (1968) 68 Cal.2d 864, 890 (*Gerhard*).) ""[T]he intention

6

required in the abandonment of an easement is the intention not to make in the future the uses authorized by it.""" (*Visitacion Investment, LLC v. 424 Jessie Historic Properties, LLC* (2023) 92 Cal.App.5th 1081, 1090 (*Visitacion*).) "[M]ere nonuse is insufficient to demonstrate an intent to abandon." (*Ibid.*)

The party asserting abandonment of an existing easement has the burden of proof. (See *Ward v. City of Monrovia* (1940) 16 Cal.2d 815, 820 [plaintiff's burden to prove right to use waters which plaintiff claimed the city had abandoned]; *Lema v. Ferrari* (1938) 27 Cal.App.2d 65, 73 ["'A party who bases his right on . . . *the abandonment or forfeiture of prior rights, has the burden of proof as to such matters*'"].) "[W]hen an appellant challenges a trial court's conclusion that the appellant failed to carry its burden of proof at trial, 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'" (*Vieira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057, 1074.)

"[T]he question of abandonment is one for the trier of fact." (*Gerhard, supra*, 68 Cal.2d at p. 891.) "[A] finding of intent to abandon is appropriate when the uses authorized by the easement have no further practical value to the dominant tenement." (*Visitacion, supra*, 92 Cal.App.5th at p. 1097.) "'Where the evidence is such that a finding either way might reasonably be made, the conclusion of the trial court must be upheld under the familiar rule protecting from review on appeal findings based on conflicting evidence.'" (*Gerhard*, at pp. 891-892, quoting *Home Real Estate Co. v. Los Angeles Pac. Co.* (1912) 163 Cal. 710, 714.)

The trial court found that while the golf course re-design "changed the layout of the course," respondent "continued to use the Easement Area as part of its golf course configuration,

7

including planting native landscaping . . . and leaving the pre-existing oleander hedge in place"; and that "reinstallation of a cart path remained entirely feasible without any substantive changes to the Easement Area." These factual findings support the conclusion that redesigning holes 13 and 14 did not evince """"unequivocal and decisive acts on the part of the [dominant tenant], clearly showing an intention to abandon."""" (*Gerhard*, *supra*, 68 Cal.2d at p. 890.)

We are not persuaded by the Roots' argument that the trial court failed to make necessary findings about the easement's purpose and scope. It simply rejected the Roots' affirmative defense of abandonment. The deed cannot state the easement's purpose and scope more plainly: it is "for cart path and greenskeeper truck purposes." By deciding against the Roots on this issue, the trial court impliedly rejected their theory that respondent's historical uses narrowed or limited the deed's express grant. It did not err by framing the issue differently than the litigants here. (See *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1379-1380 ["The trial court is not required to respond point by point to the issues posed in a request for statement of decision. The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case"].)

Lastly, the Roots argue respondent's proposed use of the easement to access an adjacent parcel exceeds its scope. We need not decide the merits of this argument. Our inquiry is strictly retrospective. Whether future uses might be authorized is not relevant to whether respondent abandoned the easement when it redesigned the course.]]

8

*Prescriptive Easement*

The Roots contend the court erred in finding respondent expanded their recorded easement rights by prescription. We are not persuaded by their arguments.

A prescriptive easement may be acquired by open, notorious, continuous, adverse use, under claim of right, for a period of five years. (*O'Banion v. Borba* (1948) 32 Cal.2d 145, 149.) A use is "'adverse'" or made under a "'claim of right'" if the use is made without the landowner's explicit or implicit permission. (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252; see also *Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 450.) The burden of proof is on the party asserting the prescriptive easement. (*Connolly v. McDermott* (1984) 162 Cal.App.3d 973, 976.)

We first consider the split of authority on the *standard* of proof required to establish a prescriptive easement. This division has previously identified clear and convincing as the standard. (See *Grant v. Ratliff* (2008) 164 Cal.App.4th 1304, 1310, citing *Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 938; *Applegate v. Ota* (1983) 146 Cal.App.3d 702.) Our colleagues in the Sixth District questioned this in *Vieira Enterprises, Inc. v. McCoy*, *supra*, 8 Cal.App.5th 1057. *Vieira* noted that *Brewer v. Murphy* emanated from *Stromerson v. Averill* (1943) 22 Cal.2d 808, which cited the clear and convincing evidence standard when reversing judgment quieting title based on allegations of constructive fraud. (*Vieira*, at p. 1074.) Revisiting the issue, we find *Vieira* persuasive and conclude the correct standard is preponderance of the evidence. (See Evid. Code, § 115 ["Except as otherwise

provided by law, the burden of proof requires proof by a preponderance of the evidence"].)[1]

We review the trial court's findings of fact for substantial evidence. (See *Warsaw v. Chicago Metallic Ceilings*, *Inc.* (1984) 35 Cal.3d 564, 570 ["Whether the elements of prescription are established is a question of fact for the trial court [citation], and the findings of the court will not be disturbed where there is substantial evidence to support them"].) We must view the evidence in the light most favorable to the prevailing party. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.) We review questions of law independently. (*Id*. at p. 461.) "'Where the trial court . . . has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.'" (*Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 449, quoting *Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241.)

The Roots first argue the court misapplied the law of prescriptive easements by giving respondent "complete control" over the easement area without establishing the elements of adverse possession—specifically, the requirement to pay taxes. (See *Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1033 ["If the prescriptive interest sought by a claimant is so comprehensive as to supply the equivalent of an estate, the claimant must establish the elements of adverse possession, not those of a prescriptive easement"].) The trial court remarked in

_____

[1] In contrast, overcoming the presumption that an owner of legal title owns the full beneficial title may be rebutted only by clear and convincing evidence. (See Evid. Code, § 662.) Respondent did not seek *legal* title to appellant's property by adverse possession or any other theory.

10

its statement of decision that respondent was "not seeking an exclusive easement; instead it merely seeks to continue the historical use that existed for decades before Defendants installed their Encroachments." It then described the rights obtained as a *non-exclusive* easement. The judgment frames the issue similarly. It states in relevant part: "The Court finds that the [respondent's] permitted use of the Easement Area . . . was expanded by historical usage to encompass the maintenance of a boundary hedgerow on the northern boundary of the Easement Area screening the golf course from 1059 Summit Road and to permit accessory landscaping on the Easement Area not otherwise used for cart path purposes." We do not interpret the trial court's decision as conveying respondent the equivalent of a fee estate. It does not, for example, prohibit the Roots from accessing the area from the hedge's endpoints, or, as respondent concedes in briefing, from making an opening in the hedge to accommodate their passage through it.

The Roots highlight the absence of any evidence at trial showing who planted the hedge, when they planted it, or where in the easement area it was planted. They contend that without this information the trial court could not have determined if respondent's acts were adverse or hostile to the owners of 1059 Summit Road. We conclude the evidence was sufficient to support the inferences necessary to establish the elements of a prescriptive easement by a preponderance of the evidence. (See *O'Banion v. Borba*, *supra*, 32 Cal.2d at pp. 149-150 ["For the trial court the question is whether the circumstances proven do or do not justify an inference showing the required elements. In the appellate court the issue is merely whether there is sufficient evidence to support the judgment of the trial court."].)

11

Aerial photographs show the hedge in place between 2007 and 2020. A longtime club employee recalled a tall hedge growing in the area since the mid-1980s. He observed the club's maintenance crew working on it during this time. A parcel map reflecting 1059 Summit Road's property line and respondent's easement were recorded in 1978. The parties did not dispute the hedge grew north of the property line and spread to 16 feet wide in places by 2020. A chain link fence existed within the hedge when the Roots purchased their property.

Respondent did not need to establish who initially planted the hedge because "continuous use of an easement over a long period of time without the landowner's interference is presumptive evidence of its existence and in the absence of evidence of mere permissive use it will be sufficient to sustain a judgment." (*Warsaw v. Chicago Metallic Ceilings, Inc.*, *supra*, 35 Cal.3d at pp. 571-572.) Not only is there an absence of evidence of respondent's permissive use, the Roots twice, in 2017 and 2020, sought permission from respondent to remove it. Respondent did not need to prove a precise inception date to establish the required five years of adverse use. (See *MacDonald Properties, Inc. v. Bel-Air Country Club* (1977) 72 Cal.App.3d 693, 702-703 [affirming country club's prescriptive rights to area used as a rough "for over 40 years –from sometime prior to 1936 to the filing of suit in 1974"].)

[[*Injunction*

Lastly, the Roots contend the injunction's mandate to "restore the Easement 'to the condition that existed on September 8, 2020'" is vague and ambiguous, noting the easement area "was almost completely covered by a series of overgrown and unruly hedges" at the time. They contend the language prohibiting them from "unreasonably interfering" with respondent's easement

12

rights is vague as well.  The Roots request we reverse the injunction and direct the trial court to clarify these provisions on remand so they are not later held in contempt.  "Where, as here, the trial court's determination of injunctive relief does not result from a pure issue of law or statutory construction, the abuse-of-discretion standard of review applies."  (*Ojavan Investors v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 392.)

"An injunction must be definite enough to provide a standard of conduct for those whose activities are proscribed, as well as a standard for the ascertainment of violations of the injunctive order by the courts called upon to apply it.  An injunction which forbids an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application exceeds the power of the court."  (*Pitchess v. Superior Court* (1969) 2 Cal.App.3d 644, 651.)  "However, '[t]he injunction need not etch forbidden actions with microscopic precision, but may instead draw entire categories of proscribed conduct.  Thus, an injunction may have wide scope, yet if it is reasonably possible to determine whether a particular act is included within its grasp, the injunction is valid.'"  (*People ex rel. Gascon v. HomeAdvisor, Inc.* (2020) 49 Cal.App.5th 1073, 1083, quoting *People v. Custom Craft Carpets, Inc.* (1984) 159 Cal.App.3d 676, 681.)

The injunction is sufficiently definite when read together with the judgment and statement of decision.  The judgment states that:  (1) "the Recorded Easement is valid and enforceable"; and (2) the easement "was expanded by historical usage to encompass the maintenance of a boundary hedgerow on the northern-boundary of the Easement Area screening the golf course from 1059 Summit Road and to permit accessory landscaping on the Easement Area not otherwise used for cart

13

path purposes." The 23-page statement of decision describes in detail which parts of the Roots' landscaping project interfered with respondent's easement rights. The easement area's condition before, during, and after the Roots' project is well documented in the record. This includes photos of the original hedge and the chain link fence the construction crew uncovered within it. In addition, the trial courts maintain broad discretion to modify or dissolve injunctions "upon a showing that . . . the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order." (Code Civ. Proc., § 533.) The parties may move to clarify or modify the injunction if enforcement issues arise.]]

DISPOSITION

Judgment is affirmed. Respondent shall recover its costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION.


CODY, J.


We concur:


YEGAN, Acting P. J.


BALTODANO, J.

14

Donna D. Geck, Judge
Superior Court County of Santa Barbara

_____

Greenberg Glusker Fields Claman & Machtinger, Charles N. Shephard, Andrew Lux, and Ricardo Cestero, for Defendants and Appellants Kevin C. Root and Jeannette P. Root.

Capello & Noël, A. Barry Cappello, Leila J. Noël, and Richard Lloyd; Pine Tillett, Norman Pine, Scott Tillett, and Neo Khuu, for Plaintiff and Respondent Montecito Country Club, LLC.