[No. B144014. Second Dist., Div. Three. Dec. 20, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
FIRST FEDERAL CREDIT CORPORATION et al., Defendants and
Appellants.

722

724

**COUNSEL**

David P. Lampkin for Defendants and Appellants.

Steve Cooley, District Attorney, Thomas Papageorge, Head Deputy District Attorney, Dana Aratani, Patrick Moran and Matthew G. Monforton, Deputy District Attorneys, for Plaintiff and Respondent.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Herschel T. Elkins, Ronald Reiter and Joseph Ragazzo, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Defendants and appellants First Federal Credit Corporation (First Federal), Frederick Tucker (Tucker) and Ida Lee Hansen (Hansen) (collectively defendants) appeal a judgment imposing $200,000 in civil penalties pursuant to the unfair competition law (UCL) (Bus. & Prof. Code,

§§ 17200 et seq., 17206)[1] and the false advertising law (§§ 17500 et seq., 17536).

The essential issue presented is whether the People had the burden of presenting evidence of defendants' financial status as a prerequisite to the imposition of civil penalties under sections 17206 and 17536.

We conclude evidence of a defendant's financial condition, although relevant, is not essential to the imposition of the statutory penalties, making the issue of a defendant's financial inability a matter for the defendant to raise in mitigation. The judgment imposing civil penalties is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 1998, the Los Angeles District Attorney filed a complaint against First Federal, Tucker and Hansen seeking an injunction, civil penalties and other relief. The operative first amended complaint, in two causes of action, alleged defendants engaged in unlawful, unfair or fraudulent acts or practices in the conduct of the business in violation of section 17200, and that defendants made untrue and misleading statements to induce the public to obtain and pay for loan services in violation of section 17500.

The matter was tried to the court. The evidence showed, inter alia, that defendants misled prospective borrowers to believe the loans were offered in conjunction with the federal government, certain borrowers found the final loan terms were substantially different than originally quoted, the loan process took much longer than promised, prospective borrowers who canceled their applications were charged cancellation fees far in excess of what was written on the original agreement, and applicants who did not pay the exorbitant cancellation fees had their credit adversely affected.

The trial court imposed total civil penalties of $200,000. In an extensive statement of decision, the trial court based the penalties on the factors set forth in sections 17206 and 17536, both of which provide in pertinent part: "In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth." (§§ 17206, subd. (b), 17536, subd. (b).)

---

[1] All further statutory references are to the Business and Professions Code, unless otherwise indicated.

As to the nature and seriousness of the misconduct, the trial court found the victims were lured into a position of vulnerability and suffered significant injury that seriously affected their finances. The number of violations exceeded 400. Persistence was shown by "the breadth of defendants' conduct and actions in the face of protestations of victims in paying cancellation fees" and defendants' history of adverse contact with governmental regulators. As to length of time, the misconduct originated in the late 1980's and went on continuously for a number of years.

Defendants argued below that the evidence as to their assets, liabilities and net worth did not support a finding of significant penalties. The trial court disagreed, stating defendants had the burden to establish their financial inability to pay penalties. The trial court found the evidence of defendants' assets was sufficient to support penalties of $200,000. It specifically rejected Tucker's assertion of personal inability to pay as not credible.

The trial court arrived at the $200,000 penalty as follows. It found at least 300 separate violations of section 17200 had occurred and imposed a penalty of $500 for each violation thereof, amounting to $150,000. It also found at least 400 separate violations of section 17500 had occurred and imposed a $125 penalty for each such violation, amounting to $50,000. The trial court ordered that defendants be jointly and severally liable for these penalties, ordered restitution and permanently enjoined defendants from engaging in various acts or practices.

Defendants filed a timely notice of appeal from the judgment.

## CONTENTS

Defendants contend the civil penalties must be reversed because there is no meaningful evidence of defendants' financial condition; the trial court erred in placing the burden of introducing evidence of financial condition on the defendants; the trial court further erred in imposing joint and several liability for the penalties; the finding that Hansen violated the false advertising law must be reversed because it rests on insufficient evidence, and the permanent injunction is overbroad and an abuse of discretion as to her.[2]

---

[2]Other than Hansen's contention that the finding she violated section 17500 is not supported by substantial evidence, defendants do not challenge the sufficiency of the evidence to support the trial court's findings that there were hundreds of violations of section 17200 and section 17500.

## DISCUSSION

1. *Sections 17206 and 17536 do not require the People to present evidence of a defendant's financial condition.*

   a. *Statutory scheme.*

The statutory scheme provides for civil penalties for engaging in unfair competition under section 17200 and for disseminating false statements under section 17500, with a maximum penalty of $2,500 for each violation. (§§ 17206, subd. (a), 17536, subd. (a).) ■ The duty to impose a penalty for each violation is mandatory. (*People v. National Association of Realtors* (1984) 155 Cal.App.3d 578, 585 [202 Cal.Rptr. 243]; *People v. Custom Craft Carpets, Inc.* (1984) 159 Cal.App.3d 676, 686 [206 Cal.Rptr. 12].)

■ Determination of these penalties is governed by section 17206, subdivision (b) and by section 17536, subdivision (b), which contain identical language: "The court *shall impose a civil penalty for each violation* of this chapter. In assessing the amount of the civil penalty, the court shall consider *any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following*: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the *defendant's assets, liabilities, and net worth*." (§§ 17206, subd. (b), 17536, subd. (b), italics added.)

   b. *Application of usual principles of statutory interpretation supports conclusion that under sections 17206 and 17536, the People do not have the burden of presenting evidence of a defendant's financial condition.*

Under a plain reading of these penalty statutes, evidence of a defendant's financial condition, although relevant, is not essential for determining the penalty.

■ When the words of a statute are clear and unambiguous, there is no need for statutory construction and courts should not indulge in it. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) Further, significance should be given, if possible, to every word of a statute, and a construction that renders a word surplusage should be avoided. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798-799 [268 Cal.Rptr. 753, 789 P.2d 934].)

■ The term "relevant circumstances" is preceded by the phrase "any one or more." (§§ 17206, subd. (b), 17536, subd. (b).) Thus, giving the

statutes their ordinary meaning, a defendant's financial condition is only one of at least six relevant factors a court may consider in determining an appropriate penalty, and the court is authorized to impose a penalty based on evidence as to *any one or more* of the enumerated factors.

Further, the term "relevant circumstances" is followed by the phrase "presented by any of the parties to the case . . . ." (§§ 17206, subd. (b), 17536, subd. (b).) Thus, these statutes do not require the People to present evidence of a defendant's financial circumstances. The statutes also do not require a defendant to present evidence of financial condition. If neither party presents any evidence relating to financial condition or some other enumerated factor, the court is still required to impose civil penalties based upon other relevant evidence before the court.

Duly giving significance to every word of the statutes, we conclude evidence of a defendant's financial condition is merely one factor to be considered, such evidence may be presented by either party to the action, and the court is required to impose a penalty even in the absence of any evidence as to a defendant's financial status. Had the Legislature intended to require evidence of a defendant's financial status to be presented by the People as a prerequisite to the imposition of civil penalties under sections 17206 and 17536, it would not have included the specific qualifying phrases "any one or more of the relevant circumstances" and "presented by any of the parties to the case" in subdivision (b) of the statutes.

c. *Case law pertaining to other statutory penalties is in accord.*

Our conclusion the People do not have the burden of establishing a defendant's ability to pay a statutory penalty pursuant to sections 17206 and 17536, making the defendant's financial inability to pay the penalty a matter for the defendant to raise in mitigation, is consistent with case law interpreting similar statutes.

For example, in *People v. Toomey* (1985) 157 Cal.App.3d 1 [203 Cal.Rptr. 642], which involved civil penalties under sections 17207 and 17535.5 for violation of an injunction, the People presented evidence of the sales and profits of a corporation which the defendant owned, but made no showing of the defendant's net assets. (157 Cal.App.3d at pp. 24-25.) Defendant complained the court lacked evidence of his personal net worth and thus had no basis for comparing the civil penalties to his wealth. (*Id.* at p. 25.) *Toomey* rejected the contention, finding the lack of any further showing of defendant's wealth did not defeat the award, the burden was on the defendant to establish his financial inability to pay, and the defendant had failed to assist the court by providing requested financial information. (*Ibid.*)

Similarly, *State of California v. City and County of San Francisco* (1979) 94 Cal.App.3d 522 [156 Cal.Rptr. 542], which involved a civil penalty for discharge of pollutants, held that once plaintiff proved there had been a discharge in violation of the Water Code it became defendant's burden to establish, by a preponderance of the evidence, that the amount of penalty imposed should be less than the statutory maximum. (*Id.* at pp. 530-532; accord, *People v. Morse* (1993) 21 Cal.App.4th 259, 272, fn. 22 [25 Cal.Rptr.2d 816].) The reviewing court also noted "[t]he courts of this state have traditionally altered the burden of proof in exceptional cases where the effectuation of public policy requires it. [Citation.] This is clearly such a case. [The statute] would have virtually no deterrent effect if the pollutor were penalized only when the plaintiff could demonstrate quantifiable damage because 'water pollution . . . results in severe unquantifiable damage.' " (*State of California v. City and County of San Francisco, supra,* 94 Cal.App.3d at p. 531.)

Consistent therewith is *Beeman v. Burling* (1990) 216 Cal.App.3d 1586 [265 Cal.Rptr. 719], involving damages imposed pursuant to a local rent control ordinance. *Beeman* held "there is no authority for the proposition that *statutory* damages—the amount of which is mandated by the Legislature—must be supported by evidence of the defendant's wealth. In such cases, evidence of the defendant's wealth is unnecessary since the court must award the amount set by statute and cannot use evidence of wealth or poverty to calculate a proper damage award. As such, [plaintiff] had no obligation to present evidence of [defendant's] ability to pay the damages awarded." (*Id.* at p. 1601.)

Likewise, *Rich v. Schwab* (1998) 63 Cal.App.4th 803 [75 Cal.Rptr.2d 170], in construing Civil Code section 1942.5, subdivision (f)(2), which entitles victims of a retaliatory rent increase to recover a punitive damage award of up to $1,000 for each retaliatory act, held "in the context of a statutory penalty, the issue of [a] defendant's financial condition will at most be a matter for the defendant to raise in mitigation." (63 Cal.App.4th at p. 817.)

To similar effect is *People ex rel. State Air Resources Bd. v. Wilmshurst* (1999) 68 Cal.App.4th 1332, 1339-1340 [81 Cal.Rptr.2d 221], an action for statutory civil penalties for transactions involving vehicles not certified to California air emissions standards. In upholding the penalty imposed, the reviewing court stated "[t]he burden of proving that actual damages are less than the liquidated maximum provided in a penalty statute lies with a

defendant, and in the absence of evidence in mitigation a court is free to assess the full amount." (*Id.* at p. 1351.)[3]

Based on all the above, we conclude the People were not required to present evidence of defendants' wealth in order to obtain the penalties mandated by sections 17206 and 17536. Under the statutory scheme, the trial court was *required* to impose civil penalties, and the issue of defendants' financial condition was a matter the defendants could raise in mitigation.

Further, where a defendant shows a true inability to pay, the court can tailor the penalty accordingly. Although the statutory scheme provides a penalty of up to $2,500 shall be imposed for each violation (§§ 17206, subd. (a), 17536, subd. (a)), the court has broad discretion to determine the penalty amount. For example, in *People v. Dollar Rent-A-Car Systems, Inc.* (1989) 211 Cal.App.3d 119, 132 [259 Cal.Rptr. 191], where the evidence showed the defendants used well over 500,000 misleading and deceptive contracts, the court imposed a civil penalty of $100,000 pursuant to sections 17206 and 17536, or less than 20 cents per violation.[4] Thus, although the imposition of a penalty for each violation is mandatory, if a defendant presents credible evidence establishing a true inability to pay, the court has discretion to impose a relatively nominal penalty.

*2. Defendants err in equating statutory penalties with punitive damages, which involve fundamentally different principles.*

In *Adams v. Murakami* (1991) 54 Cal.3d 105 [284 Cal.Rptr. 318, 813 P.2d 1348] (hereafter *Murakami*), our Supreme Court held an award of *punitive damages* cannot be sustained on appeal unless the record contains meaningful evidence of a defendant's financial condition, and the burden is on the plaintiff to introduce evidence of the defendant's financial condition. (*Id.* at pp. 108-109.) Defendants herein contend an award of civil penalties under section 17206 or section 17536 is akin to punitive damages and therefore is subject to the same requirements.

Case law already has rejected the argument that *Murakami* applies to statutory penalties. *Rich v. Schwab, supra,* 63 Cal.App.4th 803, held *Murakami* does not apply to penalties assessed under Civil Code section 1942.5,

---

[3]Other jurisdictions also place the burden on a defendant to establish an inability to pay. (See, e.g., *Kemezy v. Peters* (7th Cir. 1996) 79 F.3d 33, 36 ["The usual practice with respect to fines is not to proportion the fine to the defendant's wealth, but to allow him to argue that the fine should be waived or lowered because he cannot possibly pay it"]; *U.S. v. Quan-Guerra* (9th Cir. 1991) 929 F.2d 1425, 1427 [burden of proof regarding inability to pay fine in criminal matters rests with defendant].)

[4]*People v. Dollar Rent-A-Car Systems, Inc., supra,* 211 Cal.App.3d 119, did not discuss the defendants' financial condition.

subdivision (f), for a retaliatory rent increase, and the issue of the defendant's financial condition is simply a matter for the defendant to raise in mitigation. (63 Cal.App.4th at pp. 816-817.)

We agree with *Rich* that the holding in *Murakami* does not apply to statutory penalties due to fundamental differences between punitive damages and such penalties. Admittedly, there are certain similarities between statutory penalties and punitive damages, and an award of statutory civil penalties has been described "as being in the nature of exemplary damages . . . ." (*People v. Superior Court (Kaufman)* (1974) 12 Cal.3d 421, 433 [115 Cal.Rptr. 812, 525 P.2d 716], discussing § 17536.) Civil penalties, like punitive damages, are intended to punish the wrongdoer and to deter future misconduct. (*Kaufman*, at p. 431; cf. Civ. Code, § 3294, subd. (a) [punitive damages recoverable "for the sake of example and by way of punishing the defendant"].)

However, while both punitive damages and statutory penalties serve to motivate compliance with the law and to punish wrongdoers, UCL actions prosecuted by the People are fundamentally law enforcement actions brought to protect the public (*People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17 [141 Cal.Rptr. 20, 569 P.2d 125]; *Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1046 [111 Cal.Rptr.2d 260]), and civil penalties under the instant statutes are only imposed in actions brought by public law enforcement officials, not by private litigants. (§§ 17206, subd. (a), 17536, subd. (a).)

Further, civil penalties under the UCL are *mandatory* once a violation of law is established, and a penalty must be imposed for each violation. (*People v. National Association of Realtors, supra,* 155 Cal.App.3d at p. 585; *People v. Custom Craft Carpets, Inc., supra,* 159 Cal.App.3d at p. 686.) In contrast, " 'even after establishing a case where punitive damages are permissible, [*a plaintiff*] *is never entitled to them* . . . . Upon the clearest proof of malice in fact, it is still the exclusive province of the jury to say whether or not punitive damages shall be awarded.' " (*Pelletier v. Eisenberg* (1986) 177 Cal.App.3d 558, 564-565 [223 Cal.Rptr. 84], quoting *Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 801 [197 P.2d 713].)

With respect to the standard of proof, a UCL violation is established by the usual preponderance of the evidence. (*People v. Superior Court (Kaufman), supra,* 12 Cal.3d at p. 431, fn. 9.) In contrast, an award of punitive damages requires "clear and convincing evidence" of oppression, fraud or malice. (Civ. Code, § 3294, subd. (a).)

Further, the concern that juror passion or prejudice may affect a punitive damage award (*Murakami, supra,* 54 Cal.3d at pp. 109-110) is absent in

UCL cases because there is no right to a jury trial in such cases. (*People v. Toomey, supra*, 157 Cal.App.3d at pp. 17-18.) Runaway jury verdicts cannot occur when there is no jury to inflame.

Moreover, the Legislature has capped enforcement penalties under sections 17206 and 17536 at $2,500 per violation. These caps eliminate the almost limitless discretion inherent in punitive damages cases.

For all these reasons, we reject defendants' attempt to extend the requirements of *Murakami* to civil penalties under sections 17206 and 17536.[5]

### 3. *No abuse of discretion in penalty amount.*

▪ Having disposed of defendants' contention the People were obligated to present evidence as to defendants' financial condition, we now examine whether the $200,000 penalty was proper.

▪ An award of civil penalties imposed under sections 17206 and 17536 is reviewed under an abuse of discretion standard. (*People v. Custom Craft Carpets, Inc., supra,* 159 Cal.App.3d at p. 686; *People v. National Association of Realtors, supra,* 155 Cal.App.3d at p. 586.) An abuse of discretion occurs " 'when, after calm and careful reflection upon the entire matter, it can fairly be said that no judge would reasonably make the same order under the same circumstances.' " (*In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373, 1377 [74 Cal.Rptr.2d 636].)

▪ As indicated, the trial court herein found 300 separate violations of section 17200 as well as 400 violations of section 17500. Defendants do not challenge the sufficiency of the evidence to support the trial court's finding of 700 violations. Had the trial court imposed the maximum penalty of $2,500 for each violation, defendants would have been liable for $1.75

---

[5]We are aware *Murakami* partially disapproved *Toomey,* but that does not alter our conclusion herein that the People had no burden to present evidence of defendants' financial condition. By way of background, in holding the People were not required to present evidence of a defendant's wealth to obtain civil penalties, *Toomey* observed, inter alia, "recent decisions indicate that the burden is on the defendant to establish financial inability to pay an exemplary damage award (*Vossler v. Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952, 963 [192 Cal.Rptr. 219])." (*People v. Toomey, supra,* 157 Cal.App.3d at p. 25.) *Murakami,* in requiring an award of punitive damages to be supported by evidence of the defendant's financial condition, disapproved *Hanley v. Lund* (1963) 218 Cal.App.2d 633 [32 Cal.Rptr. 733] and its progeny, including *Vossler,* and by extension, that portion of *Toomey.* (*Murakami, supra,* 54 Cal.3d at pp. 115-116.) However, as explained, civil penalties are not subject to the same requirements as punitive damages, a distinction overlooked by *Toomey.* Further, despite *Toomey*'s partially erroneous rationale, *Toomey* is consistent with other cases involving civil penalties which hold a defendant's financial condition is a factor to be raised by the defendant in mitigation. (See Discussion, pt. 1.c., *ante.*)

million. After considering defendants' financial status, the trial court reduced the total penalty to $200,000, a reduction of more than 88 percent. Defendants' contention the trial court abused its discretion in not reducing the penalty even further is not well taken.

The record reflects, inter alia, First Federal's financial statements dated July 1995 showed fee income over a 12-month period of $1,916,468 on loan volume of $58 million. The trial court also found that Tucker and Hansen lived in a house worth at least $600,000 to $700,000 in Palos Verdes Estates, with title to the property held in the name of Tucker's mother, who lives in another state. The trial court found it was defendants' practice to shield their assets by not holding title in their own names, while continuing to fully enjoy such assets.

Thus, although the People had no obligation to present evidence as to defendants' financial condition, defendants did present evidence as to an alleged inability to pay, which evidence was considered by the trial court. On this record, we perceive no abuse of discretion in the $200,000 penalty assessed by the trial court.

4. *Trial court's imposition of joint and several liability for the civil penalties.*

As indicated, the trial court held defendants jointly and severally liable for the penalties it imposed.

As a general matter, parties may be held jointly and severally liable for unfair competition and for making false and misleading statements. (See, e.g., *People v. Dollar Rent-A-Car Systems, Inc., supra,* 211 Cal.App.3d at p. 122 [joint and several liability for violations of §§ 17206 and 17536]; *People v. Witzerman* (1972) 29 Cal.App.3d 169, 180-181 [105 Cal.Rptr. 284] [joint and several liability for violation of § 17536 where defendants cooperated with each other in the advertising and sale of certain contracts].)

Defendants assert the trial court erred in holding them jointly and severally liable for the civil penalties because there was no meaningful evidence of each person's respective financial condition. For the reasons discussed earlier, this contention likewise fails.

5. *Contentions relating to Hansen.*

a. *Hansen's liability as a principal of First Federal for violation of the false advertising law.*

Hansen contends the finding that she violated section 17500 is not supported by substantial evidence. Hansen asserts her role was that of a

notary, officer manager and receptionist, and it was Tucker who selected the target zip codes and designed the mailings.

In order to establish that Hansen violated section 17500, the People had to prove she did "make or disseminate or cause to be made or disseminated before the public in this state, . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

With respect to violations of section 17500, the trial court found hundreds, if not thousands, of defendants' mailers were sent out, but very "conservative[ly]," at least 400 misleading mailers were issued. The trial court also found Hansen was one of the two principals of First Federal, Tucker being the other. Hansen does not challenge that factual finding concerning her status.

*People v. Conway* (1974) 42 Cal.App.3d 875, 886 [117 Cal.Rptr. 251], held the president of an automobile dealership could be held criminally liable for false advertising where he was in a position to control the activities of the dealership and permitted the unlawful practices to continue after being informed of them on numerous occasions. Therefore, it is immaterial whether it was Tucker alone who physically handled the mailings. The record reflects Hansen was an active participant in the business and thus she was aware of First Federal's unlawful practices. In view of Hansen's position as one of the two principals of First Federal, she was in a position of control, yet permitted the unlawful practices to continue despite her knowledge thereof. The record supports the trial court's finding that "defendants," including Hansen, executed the misleading mailings to consumers, in violation of section 17500.

    b.   *Given the extent of Hansen's misconduct, the trial court acted within its discretion in fashioning an appropriate injunction.*

Hansen contends the permanent injunction is overbroad and an abuse of discretion as to her. Hansen concedes she is not blameless, but asserts her misconduct is relatively minor. Hansen specifically objects to paragraph (c) of the injunction, which permanently enjoins her from "[p]erforming services for borrowers or lenders in connection with loans secured by a lien on real property without personally obtaining a valid real estate broker's license . . . ."

In approaching Hansen's claim of an abuse of discretion, we are mindful a court's power to grant injunctive relief to prevent future unfair business

practices is " 'extraordinarily broad.' " (*Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 540 [63 Cal.Rptr.2d 118].)

The record reflects Hansen held herself out for years as a real estate broker while not personally licensed. Hansen signed the name of one Jack Bloom to documents that went to credit reporting companies in order to impair victims' credit for nonpayment of exorbitant cancellation fees. Hansen notarized a Jack Bloom signature that was not Bloom's, documents were notarized with Hansen's stamp and signature without her being present for the signing, and documents were notarized at Hansen's office after signatures were collected elsewhere.

Given this evidence of Hansen's unscrupulous behavior, the trial court acted within its discretion in fashioning the permanent injunction.

### DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 9, 2003.