Filed 10/6/15  P.v. Rodgers CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050335 |
| v. | (Super. Ct. No. 02HF1729) |
| DAVID BENJAMIN RODGERS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge. Affirmed.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

After his third trial on a charge of murder, a jury found defendant David Benjamin Rogers guilty of voluntary manslaughter. At sentencing, the trial court denied defendant's request to strike one of his two prior strike convictions and sentenced him to 25 years to life in state prison.

Defendant appeals contending (1) the court erred in excluding a statement defendant made in a phone call to his father shortly after the shooting and (2) the court erred in denying his motion to strike the prior conviction. We conclude the trial court did not err: exclusion of the statement did not constitute an abuse of discretion and the court properly exercised its discretion in denying the request to strike the prior conviction.

FACTS

Defendant and Jeanie Waterson, the victim, lived in the same mobile home park. They were friends and would visit each other in their mobile homes. Late in the morning of December 22, 2002, they were riding in a car together; defendant the driver.

Witness Scott Ferrell was stopped at a light when he heard a gunshot. He saw defendant's car diagonally across the intersection with a gunshot in the windshield. A passenger in the car seemed to be convulsing, and Ferrell thought she had been shot in the head. Ferrell saw the driver with a revolver in his hand. He then noticed that, as the car began to coast into the intersection, the driver pointed the gun at his passenger and fired a second shot into her head. After Ferrell heard a third shot, he drove to a safe position and called the police.

Defendant's car came to a stop. He got out, went to the back passenger side, and leaned over the window. A black Porsche approached and the driver of that car got out and approached defendant, believing there had been an accident. He asked defendant if he was okay. Defendant reached for his gun and the Porsche driver ran back to his own car. Defendant returned to the driver's side of his car.

2

Shortly thereafter, a large number of police officers, joined by Highway Patrol officers, arrived at the scene. Officer Scott Crones, the first to arrive, saw the driver of the Porsche who pointed at defendant and yelled, "he has a gun." Crones ordered defendant to put his hands in the air. Other officers similarly directed defendant to put up his hands; defendant failed to comply. One of the officers told Crones defendant had been shot. Defendant had a gunshot wound at his right ankle. Anastasia McDermott, an F.B.I. agent who was present at the scene, saw defendant waving his arms and holding something in his hand. She took defendant into custody.

Franklin Rodgers, defendant's father, testified in the earlier trials that he had received a telephone call from defendant around 11:00 a.m. They talked for about 10 minutes and defendant sounded tearful and panicked during the conversation.

Anthony Juguilon, a forensic pathologist, testified the cause of Waterson's death was a single gunshot wound to the chest. She would have lost consciousness within about 30 seconds of being shot. He also found several defensive injuries on Waterson's right arm.

DISCUSSION

*1. The trial court did not abuse its discretion in denying admission of testimony by Frank Rogers as to the contents of his telephone conversation with defendant.*

In what may be characterized as an offer of proof, defendant's lawyer stated Frank Rogers had testified at earlier trials that during the 11:00 a.m. telephone conversation defendant had said, "I've been shot. Jeanie's been shot. There was a struggle over the gun" and "the police are around me. What do I do? What do I do?" The trial court ruled this statement to be inadmissible. Defendant argues this hearsay statement should have been admitted under Evidence Code section 1240.

3

Section 1240 provides, "[e]vidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) [p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." This exception to the hearsay rule is commonly referred to as the "'spontaneous declaration exception.'" "'(1) [T]here must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.'" (*People v. Poggi* (1988) 45 Cal.3d 306, 318.) We examine the ruling of the trial court under an abuse of discretion standard. "'"[T]he discretion of the trial court is at its broadest" when it determines whether an utterance was made while the declarant was still in a state of nervous excitement.'" (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1271; see *People v. Poggi, supra,* 45 Cal.3d at pp. 318, 319.)

The trial court here gave substantial consideration to the issue. The parties were permitted to argue the matter at great length. And when issuing its ruling, the court made it clear it had reviewed and analyzed the case law. The court explained its ruling in detail, stating in part, "the police are on the scene. There's evidently helicopters hovering above, and rather than surrendering to the police, the defendant makes a phone call to his father, and he makes those statements to his father."

The court went on: "I don't mean to stress the time, whether it's 7 minutes, 14 minutes or whatever, but time is a factor. It's not dispositive but the time between the event [and] the statement is a factor, and there is a relatively short period of time between the actual shooting and the statement. And in my judgment this factor on spontaneous declaration law is a problem, and that is [factor] number 2. 'The utterance may have been made before there has been time to contrive and misrepresent while the nervous

4

excitement may be supposed still to dominate and the reflective powers to be yet in abeyance.' That requirement is not met here. There is time to reflect and contrive and misrepresent." The court concluded: "Under the circumstances of this case, [factor] number 2 is not complied with. And . . . I've read more on this and contemplated more on this, and I think those statements are inadmissible."

"An abuse of discretion occurs '"when, after calm and careful reflection upon the entire matter, it can fairly be said that no judge would reasonably make the same order under the same circumstances."'" (*People v. First Federal Credit Corp.* (2002) 104 Cal.App.4th 721, 733.) Considering the broad discretion governing the trial court's decision on the admissibility of this evidence, we cannot say that such discretion was abused here.

*2. The trial court did not err in denying defendant's motion to strike one of his prior convictions.*

The trial court denied defendant's motion to strike one of his prior convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. Defendant argues he was entitled to have his conviction stricken because he was "only" convicted of manslaughter, not murder, the prior offenses were closely related in time, and occurred in 1990. Defendant acknowledges he committed rule infractions while in custody but he is now reformed and devoted to his faith.

"In *Romero*, the state Supreme Court ruled that the Three Strikes law did not remove a sentencing court's discretion to dismiss a defendant's prior strike or strikes to achieve a punishment in the furtherance of justice." (*People v. Solis* (2015) 232 Cal.app.4th 1108, 1124.) In *People v. Williams* (1998) 17 Cal.4th 148, the Supreme Court explained that a sentencing court's exercise of discretion to dismiss a prior strike is to be guided by the following standard: may the defendant, "in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions,

5

and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id*. at p. 161.)

Based on the record here, we cannot conclude the trial court abused its discretion in denying defendant's *Romero* motion. Unlike *People v. Vargas* (2014) 59 Cal.4th 635, where the Supreme Court held the trial court could not impose the maximum sentence on a defendant who suffered two prior strike convictions that arose from a single act involving a single victim, defendant's prior strike offenses were committed at different times and in separate places. The absence of any criminal record since defendant's 1990 strike convictions was largely due to the fact he was in prison for most of that time. Further, the crime, which seems to be totally unprovoked, combined with defendant's conduct while in custody, belies his claim of sudden reformation.

## DISPOSITION

The judgment is affirmed.

RYLAARSDAM, J.

WE CONCUR:

O'LEARY, P. J.

ARONSON, J.

6