Filed 3/5/26 Certified for Partial Pub. 3/27/26 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| JON MORAMARCO et al., | |
| Plaintiffs and Respondents, | E084620 |
| v. | (Super.Ct.No. PRMC1900167) |
| EDWARD J. NOWAKOSKI, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael Rushton, Judge. Affirmed with directions.

Edward Nowakoski, in pro. per., for Defendant and Appellant.

Haight Brown & Bonesteel and Arezoo Jamshidi, for Plaintiffs and Respondents.

Defendant Edward J. Nowakoski, an attorney, served as trustee of the John A. Moramarco Restated Living Trust dated March 26, 2003 (Trust).  For three years following the settler's death, he failed to account to the beneficiaries.  Plaintiffs and respondents Jon and Anthony Moramarco, beneficiaries of the Trust (beneficiaries), sought his removal as trustee, an accounting, a judgment for twice the value of the

1

property recovered (Prob. Code,[1] § 859), and attorney fees and costs.  Separately, an action in the State Bar Court resulted in Nowakoski's disbarment and a restitution order for $542,688, including the principal amount of $394,681.88, plus prejudgment interest of $148,006.  Further, Nowakoski entered into a plea agreement with the Riverside County District Attorney on several charges and was placed on probation.  In this action, the probate court ordered him to pay the beneficiaries a civil penalty of $399,681 and attorney fees and costs in the amount of $61,702.54.  (§ 859.)

Nowakoski appeals contending the probate court erred (1) in its conclusion as a matter of law that there is no authority to consider inability to pay as mitigation of a section 859 civil penalty, and (2) in its award of additional prejudgment interest.  He further asserts the court abused its discretion in awarding attorney fees and costs in the amount of $61,702.54.  We conclude the judgment should be amended to indicate that postjudgment interest does not accrue on the prejudgment interest.  As amended, we affirm.

## I.  PROCEDURAL BACKGROUND AND FACTS

Nowakoski drafted the John A. Moramarco Restated Living Trust dated March 26, 2003.  In early 2016, he was named successor trustee; Mr. Moramarco died on July 24, 2016.  At the time of Mr. Moramarco's death, the Trust owned, inter alia, two residential investment properties that were leased to tenants and the family home.  The family home was transferred to the surviving wife, and the other two properties were sold, netting the

---

[1]  All undesignated statutory references are to the Probate Code.

Trust $683,751.41. Nowakoski opened a trust account and, from 2016 to 2018, he made multiple electronic transfers from the trust account to other accounts. These transfers were neither for client purposes nor for the benefit of the Trust beneficiaries.

On July 8, 2019, following repeated unsuccessful requests for an accounting of Trust funds, one of the beneficiaries—Jon Moramarco—petitioned the probate court to suspend/remove Nowakoski as trustee, appoint a successor trustee, instruct successor trustee to account, and surcharge Nowakoski under section 859. Nowakoski petitioned to settle the trustee's account (only $41.06 of Trust funds remained) and resigned as trustee; Anthony Moramarco was appointed successor trustee. These proceedings were stayed when Jon Moramarco filed a complaint against Nowakoski with the State Bar of California. Following an investigation, the State Bar concluded Nowakoski "willfully and intentionally misappropriated $394,681.88 that the Trust's beneficiaries were entitled to receive and thereby committed an act involving moral turpitude in willful violation of Business and Professions Code section 6106." He was disbarred and ordered to pay restitution of $542,688 ($394,681.88, plus $148,007 in interest from August 1, 2018). Separately, the Riverside County District Attorney's office charged him with grand theft, money laundering, fraud and embezzlement, and perjury. He paid restitution of $542,688 and entered into a plea agreement that required 36 months of probation, 60 hours of community service, and payment of certain fines and costs.

In February 2023, the probate court lifted its stay, and the surcharge matter proceeded to trial. Nowakoski argued "he was desperate [due to his declining health] and that that desperation should make it not a matter of bad faith." He asked the court to

3

consider his financial condition, noting his "family cash was exhausted by payment of the restitution amount" and he should be protected by the Eighth Amendment. He claimed that at 71 years of age, he has no additional cash or retirement savings, his sole income consists of monthly Social Security payments of $2,871, he is unable to secure employment, has no present or future ability to pay, and his only remaining asset is the family home valued at $1,500,000, which he owns with his wife. Over the beneficiaries' objection, Nowakoski was allowed to introduce a document he prepared outlining his alleged financial status.

After the trial, the probate court requested additional briefing as to whether it could consider Nowakoski's financial ability to pay in mitigation against section 859 damages. Nowakoski argued his financial inability to pay is relevant to evaluating whether the damages awarded would violate federal and state constitutional protections against excessive penalties. The beneficiaries responded that no published case supports this argument, other than *Estate of Kraus* (2010) 184 Cal.App.4th 103, 118 (*Estate of Kraus*), and *Hill v. Superior Court* (2016) 244 Cal.App.4th 1281, 1287-1291 (*Hill*), which extensively analyzed *Estate of Kraus* and concluded that since a section 859 penalty is not a punitive damages award, there is no authority for taking evidence of defendant's ability to pay. The beneficiaries further pointed out the distinction between punitive damages and a civil penalty requiring triple damages. Specifically, they noted civil penalties do more than just punish, they "deter specific misconduct."

After considering the supplemental briefing, the probate court accepted the parties' stipulation that the amount of the taking was $399,681.88 and found a section 859 civil

4

penalty is warranted. The court concluded the holding in *Estate of Kraus*—as quoted in *Hill*—constitutes nonbinding dicta and "there is no authority for the court to consider inability to pay as mitigation to the statutory penalty imposed pursuant to section 859." Significantly, the court noted that "were such discretion permitted, the court would not reduce the penalty." It viewed Nowakoski's evidence on his ability to pay as "only a snapshot in time." Nonetheless, it acknowledged that Nowakoski's misconduct has left him in a challenging position because he "has lost his license to practice law in the twilight of his career, and he claims to have no assets other than his personal residence. Thus, his circumstances are much reduced due to his conduct in this case which resulted in his disbarment and the imposition of a sizeable restitution fine." However, the court emphasized the purpose of the civil penalty under section 859 is to deter precisely the kind of misconduct that occurred here. At the time of the misappropriation, Nowakoski was a licensed attorney and fiduciary, retained for his legal expertise and professional background. Rather than uphold the obligations of his roles, he betrayed the beneficiaries by stealing the Trust assets and concealing his actions. As the court pointed out, his misconduct is far more egregious than that of an untrained family member who improperly takes from an estate while serving as trustee or administrator due to an involuntary appointment. In addition to the civil penalty of $399,681.88, the court awarded $205,928.68 in prejudgment interest and $61,702.54 in attorney fees and costs.

## II. DISCUSSION

Nowakoski contends the probate court erred (1) in concluding as a matter of law that there is no authority to consider inability to pay as mitigation of a section 859 civil

5

penalty, and (2) in awarding additional prejudgment interest.  He further asserts the court

abused its discretion in awarding attorney fees and costs in the amount of $61,702.54.

*A.  Inability to Pay is not a Mitigating Factor in Determining a Section 859 Civil Penalty.*

Nowakoski faults the probate court for not considering his inability to pay in

determining the amount of his statutory penalty.[2]  He contends *Estate of Kraus* and *Hill*

support his position that the constitutional right to be protected against excessive fines

allows him to introduce evidence of inability to pay and requires the court to consider

such evidence as a mitigating factor to the statutory penalty.  We are not persuaded.

Section 859, in relevant part, provides, "If a court finds that a person has in bad

faith wrongfully taken . . . property belonging to . . . a trust . . . the person *shall be liable*

*for twice the value of the property recovered* by an action under this part. . . .  The

*remedies provided in this section shall be in addition to any other remedies available in*

*law* to a person authorized to bring an action pursuant to this part."  (§ 859, italics added.)

"The section 859 penalty is imposed when an interested party establishes both that the

property in question is recoverable under section 850 and that there was a bad faith taking

of the property.  [Citations.]"  (*Estate of Kraus*, *supra*, 184 Cal.App.4th at p. 112.)

The section 859 penalty, albeit punitive in nature, is not equivalent to a punitive

damages award that requires evidence of the defendant's financial condition.  (See *Hill*,

---

[2]  We note the probate court determined that, even if it did consider defendant's financial condition, it would not reduce the penalty.  As the court stated, "[T]he issue of ability to pay presented by respondent, if reliable, presents only a snapshot in time.  On the other hand, the judgment of this court endures beyond that snapshot and may be enforced over a period of many years.  Thus, it comprehends the reality that personal finances are not static."

*supra*, 244 Cal.App.4th at p. 1291; *Estate of Kraus*, *supra*, 184 Cal.App.4th at p. 118.) Nonetheless, *Estate of Kraus* states, "The Courts of Appeal have held evidence of a defendant's financial status is not essential to the imposition of statutory penalties, and financial inability to pay is a matter to be raised in mitigation. [Citations.]" (*Ibid*.) The opinion cites the following case law: *Los Angeles County Metropolitan Transportation Authority v. Superior Court* (2004) 123 Cal.App.4th 261, 276 [comparing punitive damages to civil penalties under Civil Code section 52]; *People v. First Federal Credit Corp.* (2002) 104 Cal.App.4th 721, 726, 732 [statutory penalties under Business and Professions Code sections 17206 and 17536 require proof of violations by a preponderance of the evidence, while punitive damages require "'clear and convincing evidence' of oppression, fraud, or malice"]; *Rich v. Schwab* (1998) 63 Cal.App.4th 803, 817 (*Rich*) [penalties assessed under Civil Code section 1942.5 for a retaliatory rent increase may be imposed without regard to the landlord's net worth]; *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1601 (*Beeman*) ["there is no authority for the proposition that statutory damages . . . must be supported by evidence of the defendant's wealth"]; and *State of California v. City and County of San Francisco* (1979) 94 Cal.App.3d 522, 530-532 [once evidence established a violation of Water Code section 13385, defendant had burden to establish the court should impose penalty less than statutory maximum]. (*Estate of Kraus*, *supra*, 184 Cal.App.4th at p. 118.)

None of the cases cited in *Estate of Kraus* involves a section 859 statutory penalty. Rather, they stress that statutory damages are created and defined by the Legislature, and as such, the precise language of the statute governs their application. As *Beeman*

7

observed, "Statutory damages may either take the form of penalties, which impose damages in an arbitrary sum, regardless of actual damages suffered or . . . may provide for the doubling or trebling of the actual damages as determined by the judge or jury. [Citation.]  Thus, while both exemplary damages and statutory damages serve to motivate compliance with the law and punish wrongdoers, they are distinct legal concepts, one of which is entrusted to the factfinder, the other to the Legislature." (*Beeman*, *supra*, 216 Cal.App.3d at pp. 1597-1598.)  According to *Rich*, "[w]here . . . the Legislature has set the level of punishment which may be imposed for a particular act, the doctrine of separation of powers limits the nature of our review when such a penalty has in fact been imposed.  We are required to '"accord 'substantial deference' to legislative judgments concerning appropriate sanctions for the conduct at issue."'  [Citation.]  As with any other statute, we may interfere with the Legislature's determination of what is required by the public interest only when there is no rationale basis for the decision reached by Legislature.  [Citation.]" (*Rich*, *supra*, 63 Cal.App.4th at p. 816.)

Here, Probate Code section 859 imposes a strict and mandatory penalty structure once two conditions are met, namely, the property is recoverable under Probate Code section 850, and the taking of the property was done in bad faith.  (Prob. Code, § 859 [". . . the person shall be liable for twice the value of the property recovered . . ."].)  The probate court has no discretion regarding the calculation of the amount of the statutory penalty.  Moreover, Probate Code section 859 is silent on the issue of mitigating factors, including defendant's financial inability to pay.  (Compare Prob. Code, § 859 with Bus. & Prof. Code, § 17206, subd. (b) [the court considers "the defendant's assets, liabilities, and

8

net worth," among other facts, before imposing penalties].)  Thus, Probate Code section 859 does not authorize the probate court to weigh any mitigating factors, including defendant's ability to pay, when imposing the mandatory penalty.

Notwithstanding the above, Nowakoski argues the amount of the section 859 civil penalty violates his federal and state constitutional right to be protected against excessive fines.  (U.S. Const., 8th Amend. ["Excessive bail shall not be required, nor excessive fines imposed"]; Cal. Const. art. I, § 17 ["Cruel or unusual punishment may not be inflicted or excessive fines imposed"]; *Austin v. United States* (1993) 509 U.S. 602, 621-622 [a "'civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment' . . . and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause"]; *Hale v. Morgan* (1978) 22 Cal.3d 388 (*Hale*).)  He claims the *Hale* case is similar to this case because the statutory penalty in *Hale* allowed the aggrieved party to bring a civil action against the landlord to recover damages and a mandatory civil penalty.  We disagree.

In *Hale*, a mobilehome park tenant failed to pay rent in March, April, and May 1975.  (*Hale*, *supra*, 22 Cal.3d at p. 393.)  In response, the landlord disconnected the water and electricity.  (*Ibid*.)  Until November, the tenant lived, alternatively, in the mobilehome and in his sister's residence.  (*Ibid*.)  In August, the tenant sued the landlord for damages and statutory penalties pursuant to Civil Code section 789.3 ($100 a day).  (*Hale*, at p. 393.)  Automatic application of these penalties would have resulted in a recovery of $36,500.  (*Id.* at p. 405.)  Even though the trial court awarded only one-half

9

of that amount, the Supreme Court struck down the award as confiscatory and wholly disproportionate to the legitimate legislative goals of the statute. (*Id*. at pp. 405, 407.) The Supreme Court ruled that a penalty violates due process when it is "mandatory, mechanical, *potentially limitless* in its effect regardless of circumstance, and capable of serious abuse." (*Id*. at p. 404, italics added.) As the Court observed, "While the record does not disclose the purchase price of the park, it is not inconceivable that though [the tenant's] initial entry may have constituted a trespass, and though it was subsequently determined judicially that he breached his rental contract, he may well end up owning the park or a substantial equity therein as a consequence of the application of [Civil Code] section 789.3 to [the landlord's] conduct. Such a confiscatory result is wholly disproportionate to any discernible and legitimate legislative goal, and is so clearly unfair that it cannot be sustained." (*Id*. at p. 405.)

Unlike the statutory penalty in *Hale*, a section 859 penalty is not limitless in its effect. Rather, it provides a fixed multiple of actual damages—twice the value of the property—and only applies if the person wrongfully took property in bad faith. The higher requirement of bad faith restricts the statute's reach. Moreover, as the beneficiaries point out, Nowakoski does not argue that section 859's provision for double damages is inherently excessive and unreasonable. Rather, he asserts that imposition of double damages in his case is excessive because he lacks the financial means to pay. But the purpose of imposing double damages is to discourage fiduciaries and others in positions of trust from abusing their power to the detriment of beneficiaries (via the wrongful taking of property in bad faith) by imposing an enhanced penalty (twice the

10

property value).  The penalty is set at twice the value of the property taken, regardless of the defendant's ability to pay.  Accordingly, the probate court did not abuse its discretion in not considering Nowakoski's financial status as a mitigating factor.

B.  *The Award of Prejudgment Interest is Proper.*

On May 20, 2022, Nowakoski paid restitution in the amount of $542,688 ($394,682 in principal and $148,006 in interest).  At trial, the beneficiaries requested additional prejudgment interest of $62,922.56, explaining that "[t]he surcharge for each taking was individually calculated by multiplying the amount taken by the number of days between the date of the taking and May 20, 2022, multiplied by ten percent divided by 365.  The ten percent simple interest was divided by 365 to calculate a daily rate of simple interest.  The daily rate of simple interest was multiplied by the number of days between the taking and May 20, 2022.  That product was multiplied by the amount taken."  They provided examples of their calculations and an exhibit showing the totals of the surcharge for each individual taking.  The probate court adopted the beneficiaries' calculations and awarded additional prejudgment interest.

Nowakoski contends the probate court erred in awarding prejudgment interest because "the amount of the interest could not be determined up until the time of trial" due to "the complexity of the calculation" and the fact that the beneficiaries "throughout the course of this litigation, continuously asserted incorrect amounts in excess of the actual amount for the takings, making an accurate calculation of any additional interest impossible."  In response, the beneficiaries argue that Nowakoski knew exactly how much money he transferred from the Trust's account to an account under his control,

11

along with the dates when he made the transfers. Thus, they assert "the damages were capable of being made certain by straightforward calculation. There is no ambiguity, and no legal or factual basis to avoid the application of Civil Code section 3287."[3] We agree.

Regarding the issue of compounding interest upon interest, the probate court credited Nowakoski's May 20, 2022, restitution payment of $542,688 against the current judgment as follows: "first all pre-judgment interest due and owing as of May 20, 2022, will be deemed paid and satisfied. The remaining amount thus owed, will be considered principal. Per the calculations of [the beneficiaries], which are not contradicted by [Nowakoski], the total amount of prejudgment interest owed on each taking as of May 20, 2022, totals $205,928.68. Once that amount is zeroed out by the restitution payment, Mr. Nowakoski has an additional $336,759.32 left to apply to the principal balance of the taking. This leaves an amount owing on the principal in the sum of $62,922.56." Nowakoski faults the court for reallocating the principal and interest paid in 2022 to include all of the additional prejudgment interest sought by the beneficiaries with the $148,006 interest previously paid, claiming the court has reclassified $62,922.56 in prejudgment interest as additional unpaid principal when the court understood that "all but $5,000 of the principal was paid off as of May 20, 2022." He contends "[t]he prejudgment interest and the reallocation of principal and interest are contrary" to Civil Code section 1479 and the holding in *Kerley v. Weber* (2018) 27 Cal.App.5th 1187, 1199-

---

[3] Civil Code section 3287, in relevant part, provides: "(a) A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, . . ."

1200 [Civil Code section 1479 "provides that a debtor may specify how his or her 'performance' should be credited by communicating his or her intention to the creditor at the time of performance. In the absence of such a specification, the creditor may choose to apply a payment to any obligation then due"].

The beneficiaries argue the probate court properly applied Civil Code section 1479 by crediting the $542,688 restitution payment first to the accrued prejudgment interest because Nowakoski never instructed the beneficiaries regarding how the restitution payment should be credited. However, Nowakoski explains that during the course of the criminal case, a court order prevented him and his counsel from having any direct contact with the beneficiaries. Therefore, he manifested his intentions by notifying the prosecutor handling his criminal case, the amounts owed were calculated, and he paid the beneficiaries based on those calculations. Given this explanation, the beneficiaries' argument is not persuasive.

Nonetheless, they further contend that even if the court awarded compound interest, it was permitted to do so since Nowakoski willfully violated his duties as a trustee by misappropriating nearly $400,000 from the Trust. (*Baker v. Pratt* (1986) 176 Cal.App.3d 370, 384 ["The circumstances of the case determine whether the interest awarded is simple or compound. In cases of mere negligence, no more than single interest is ever added to the loss or damage resulting therefrom, but if the trustee is guilty of some positive misconduct or [willful] violation of duty, the court may award compound interest."].) However, the court stated it was not ordering prejudgment interest on the remaining sum of principal owed. Adding "[b]y disallowing prejudgment

13

interest on the remaining $62,922.56, the court avoids the concern of interest being paid upon interest either in the past or in the future."

Assuming the restitution payment was incorrectly credited to the outstanding prejudgment interest and the postjudgment interest cannot accrue on a judgment that includes prejudgment interest, the beneficiaries invite this court to correct the judgment by directing the probate court to amend the judgment to indicate that postjudgment interest does not accrue on the prejudgment interest amount. We accept their invitation.

*C. The Probate Court did not Abuse Its Discretion in Awarding Attorney Fees.*

Nowakoski contends the probate court abused its discretion by adding an award of attorney fees on top of the statutory penalty when "he is unable to pay" and "at least half of the time recorded in the billing entries [was for] researching, recalculating, discussing, preparing unnecessary supplements to the original petition, preparing for unnecessary hearings, preparing written discovery, preparing for [Nowakoski's] deposition, mediation, and trial, all the while never succeeding in establishing the inflated amount of the surcharge they were seeking."

The lower court's ruling on a motion for attorney fees is generally reviewed for abuse of discretion. (See *Mepco Services, Inc. v. Saddleback Valley Unified School Dist.* (2010) 189 Cal.App.4th 1027, 1045.) As explained in *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132, the ""'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'"" (See *Estate of Hart* (1953) 119 Cal.App.2d 310, 318 [unless the complaining

14

party establishes both a clear case of abuse and a miscarriage of justice, "'an appellate court will not substitute its opinion and thereby divest the trial court of its discretionary power'"].)

Here, following briefing and argument, the probate court considered "the prolonged nature of the litigation, the misconduct of [Nowakoski] as a fiduciary, the inequity of requiring the victims of the fiduciary's misconduct to foot the bill for their own legal fees, and the important role that [their] attorney played in helping them seek redress given the expertise and qualifications of the fiduciary" and determined imposition of reasonable attorney fees and costs is appropriate. After reviewing counsel's declaration and finding both the hourly rates charged and the overall hours billed to be reasonable, the court awarded $61,702.54 in attorney fees and costs.

Nowakoski asserts that "at least half of the time recorded in the billing entries" was wasted on counsel's attempt to establish an inflated amount of the surcharge. However, he makes this assertion without providing any legal analysis or citing any legal authority or support in the record. The argument is therefore forfeited. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153; Cal. Rules of Court, rule 8.204(a)(1)(C) [each brief on appeal must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) "'As a general rule, "[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment." [Citations.] It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no

15

citation "is furnished on a particular point, the court may treat it as waived." [Citation.]'

[Citation.]" (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP*

(2011) 201 Cal.App.4th 368, 384.) The lack of *any citations* in Nowakoski's briefs to the

record on appeal severely hampers our ability to conduct a reasoned analysis of the merits

of his assertion. Thus, we affirm the order awarding fees on the ground that he has

forfeited his argument on appeal.

## III. DISPOSITION

We direct the probate court to amend the judgment to indicate that postjudgment

interest does not accrue on the prejudgment interest amount. As amended, the judgment

is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule

8.278(a)(1), (4).)

McKINSTER
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

16

Filed 3/27/26

# CERTIFIED FOR PARTIAL PUBLICATION[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

# <u>ORDER</u>

| | |
|---|---|
| JON MORAMARCO et al.,<br>    Plaintiffs and Respondents,<br>v.<br>EDWARD J. NOWAKOSKI,<br>    Defendant and Appellant. | E084620<br><br>(Super.Ct.No. PRMC1900167) |

The court has reviewed the request filed by respondents on March 25, 2026, to publish the nonpublished opinion in the above matter filed on March 5, 2026.

We grant the request because the opinion:  (1) "Advances a new interpretation, clarification, criticism, or construction of a provision of a constitution, statute, ordinance, or court rule"; (2) "Addresses or creates an apparent conflict in the law"; and (3) "Involves a legal issue of continuing public interest."  (Cal. Rules of Court, rule 8.1105(c)(4), (c)(5), and (c)(6).)

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II(B) and II(C).

1

IT IS SO ORDERED that said opinion be certified for partial publication pursuant to California Rules of Court, rule 8.1105(b).

McKINSTER

Acting P. J.

We concur:

MILLER

J.

CODRINGTON

J.

2